# CUPP, PENITENTIARY SUPERINTENDENT
## *v.* NAUGHTEN

No. 72–1148.  Argued October 16, 1973—Decided December 4, 1973

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, and POWELL, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post,* p. 150.

*John W. Osburn,* Solicitor General of Oregon, argued the cause for petitioner. With him on the brief were

142

*Lee Johnson,* Attorney General, and *Thomas H. Denney* and *John H. Clough,* Assistant Attorneys General.

*Ross R. Runkel,* by appointment of the Court, 412 U. S. 904, argued the cause and filed a brief for respondent.

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Naughten was tried in an Oregon state court for the crime of armed robbery. The State's principal evidence consisted of testimony by the owner of the grocery store that respondent had robbed the store at gunpoint and of corroborative testimony by another eyewitness. In addition, two police officers testified that respondent had been found near the scene of the robbery and that the stolen money was located near his car in a neighboring parking lot. A few items of clothing, identified as belonging to respondent, and the stolen money were also introduced. Respondent neither took the stand himself nor called any witnesses to testify in his behalf.

The trial judge charged the jury that respondent was presumed innocent "until guilt is proved beyond a reasonable doubt," and then continued:

> "Every witness is presumed to speak the truth. This presumption may be overcome by the manner in which the witness testifies, by the nature of his or her testimony, by evidence affecting his or her character, interest, or motives, by contradictory evidence, or by a presumption." App. 16.

The trial judge also instructed the jury as to the State's burden of proof, defining in detail the concept of reasonable doubt; later, at the respondent's request, he gave an additional instruction on the presumption

of innocence.[1]  The jury returned a verdict of guilty, and respondent was sentenced to a term in the state penitentiary.

The Oregon Court of Appeals affirmed respondent's conviction, finding that inclusion of the "presumption of truthfulness" instruction in the judge's charge to the jury was not error.  The Supreme Court of Oregon denied a petition for review.  His state remedies thus exhausted, respondent sought federal habeas corpus relief in the United States District Court for the District of Oregon, asserting that the presumption-of-truthfulness charge shifted the State's burden to prove guilt beyond a reasonable doubt and forced respondent instead to prove his innocence.  The District Court noted that similar instructions had met with disfavor in the federal courts of appeals, but observed that "[those] cases [did] not involve appeals from State Court convictions."  Recognizing that the instruction was "proper under Oregon law," the District Court stated:

> "In any event, the giving of the instruction did not deprive petitioner of a federally protected constitutional right." [2]

The Court of Appeals for the Ninth Circuit reversed.[3] That court, noting that the instruction in question "has

---

[1] The judge also instructed the jury that respondent did not have to testify and that the jury was to draw no inference of guilt from his failure to do so.

[2] Alternatively, the District Court held that assuming there had been error of constitutional proportions in the charge, the error was harmless in view of the overwhelming evidence of guilt.  *Harrington* v. *California*, 395 U. S. 250 (1969).  The Court of Appeals, without detailing its reasoning, disagreed, stating that the State had not met its burden of showing that the error was harmless.  In view of our disposition of this case, we do not reach that issue.

[3] 476 F. 2d 845, 846 (1972).  The court then denied a petition for rehearing by an equally divided vote.

been almost universally condemned" [4] and that Naughten had not testified or called witnesses in his own behalf, went on to say:

"Thus, the clear effect of the challenged instruction was to place the burden on Naughten to prove his innocence. This is so repugnant to the American concept that it is offensive to any fair notion of due process of law." 476 F. 2d 845, 847.

We granted certiorari to consider whether the giving of this instruction in a state criminal trial so offended established notions of due process as to deprive the respondent of a constitutionally fair trial.

Although the presumption-of-truthfulness instruction apparently became increasingly used in federal criminal prosecutions following the publication of Judge Mathes' Jury Instructions and Forms for Federal Criminal Cases, 27 F. R. D. 39, 67 (1961),[5] the instruction appears to have had quite an independent origin in Oregon practice. The instruction given in Naughten's trial was directly based on § 44.370 of the Oregon Revised

[4] The court cited nine cases from various federal courts of appeals, all of which had expressed disapproval of the presumption-of-truthfulness instruction. See *United States* v. *Birmingham,* 447 F. 2d 1313 (CA10 1971); *United States* v. *Stroble,* 431 F. 2d 1273 (CA6 1970); *McMillen* v. *United States,* 386 F. 2d 29 (CA1 1967), cert. denied, 390 U. S. 1031 (1968); *United States* v. *Dichiarinte,* 385 F. 2d 333 (CA7 1967); *United States* v. *Johnson,* 371 F. 2d 800 (CA3 1967); *United States* v. *Persico,* 349 F. 2d 6 (CA2 1965). See also *United States* v. *Safley,* 408 F. 2d 603 (CA4 1969); *Harrison* v. *United States,* 387 F. 2d 614 (CA5 1968); *Stone* v. *United States,* 126 U. S. App. D. C. 369, 379 F. 2d 146 (1967) (Burger, J.). None of these cases, however, dealt with review of a *state* court proceeding.

[5] Judge Mathes' original instruction was modified in W. Mathes & E. Devitt, Federal Jury Practice and Instructions § 9.01 (1965), and is not included in E. Devitt & C. Blackmar, Federal Jury Practice and Instructions (2d ed. 1970). See *id.,* vol. 1, § 12.01, and accompanying note.

Statutes, a provision first passed in 1862. Only four years ago, the Oregon Supreme Court upheld the validity of the instruction against constitutional attack. *State* v. *Kessler*, 254 Ore. 124, 458 P. 2d 432 (1969). At that time the court noted the extensive criticism of similar instructions in the federal courts of appeals and the possible effect of such instructions on the presumption of innocence. Nonetheless, though the court stated that "it might be preferable not to instruct the jury in criminal cases where defendant does not take the stand that a witness is presumed to speak the truth," it concluded that there was no error in giving the instruction "if accompanied by an explanation of how the presumption can be overcome." *Id.,* at 128, 458 P. 2d, at 435. The Oregon Court of Appeals followed that holding in affirming respondent's conviction in this case.

The criticism of the instruction by the federal courts has been based on the idea that the instruction may "dilute," "conflict with," "seem to collide with," or "impinge upon" a criminal defendant's presumption of innocence; [6] "clash with" or "shift" the prosecution's burden of proof; [7] or "interfere" with or "invade" the province of the jury to determine credibility. [8] In fact, in some cases, the courts of appeals have determined that a presumption-of-truthfulness instruction is so undesirable that the defendant may be entitled to a new trial on that ground alone. [9] A reading of these cases, however, indi-

---

[6] See, *e. g., United States* v. *Johnson, supra,* at 804; *United States* v. *Stroble, supra,* at 1278; *United States* v. *Dichiarinte, supra,* at 339; *Stone* v. *United States, supra,* at 370, 379 F. 2d, at 147.

[7] See, *e. g., United States* v. *Meisch,* 370 F. 2d 768, 774 (CA3 1966); *United States* v. *Birmingham, supra,* at 1315.

[8] See, *e. g., United States* v. *Stroble, supra; United States* v. *Birmingham, supra.*

[9] See, *e. g., United States* v. *Birmingham, supra.* However, the instruction given in *Birmingham* was somewhat different from the instruction given here. The jury there was told that the presump-

cates that the courts of appeals were primarily concerned with directing inferior courts within the same jurisdiction to refrain from giving the instruction because it was thought confusing, of little positive value to the jury, or simply undesirable. The appellate courts were, in effect, exercising the so-called supervisory power of an appellate court to review proceedings of trial courts and to reverse judgments of such courts which the appellate court concludes were wrong.

Within such a unitary jurisdictional framework the appellate court will, of course, require the trial court to conform to constitutional mandates, but it may likewise require it to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution. Thus even substantial unanimity among federal courts of appeals that the instruction in question ought not to be given in United States district courts within their respective jurisdictions is not, without more, authority for declaring that the giving of the instruction makes a resulting conviction invalid under the Fourteenth Amendment. Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruc-

---

tion of truthfulness controlled "[u]nless and until outweighed by evidence to the contrary." 447 F. 2d, at 1315. Apparently no additional instruction was given regarding consideration of the manner or nature of the witnesses' testimony or of the witnesses' possible motivations to speak falsely. See also *Johnson, supra.*

tion to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd* v. *United States,* 271 U. S. 104, 107 (1926). While this does not mean that an instruction by itself may never rise to the level of constitutional error, see *Cool* v. *United States,* 409 U. S. 100 (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

The Court of Appeals in this case stated that the effect of the instruction was to place the burden on respondent to prove his innocence. But the trial court gave, not once but twice, explicit instructions affirming the presumption of innocence and declaring the obligation of the State to prove guilt beyond a reasonable doubt. The Court of Appeals, recognizing that these other instructions had been given, nevertheless declared that "there was no instruction so specifically directed to that under attack as can be said to have effected a cure." 476 F. 2d, at 847. But we believe this analysis puts the cart before the horse; the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

This Court has recently held that the Due Process Clause requires the State in criminal prosecutions to prove guilt beyond a reasonable doubt. *In re Winship,* 397 U. S. 358 (1970). In that case the judge, presiding over the trial of a juvenile charged with stealing $112 from a woman's pocketbook, specifically found that the

evidence was sufficient to convict under a "preponderance of the evidence" standard but insufficient to convict under a "beyond a reasonable doubt" standard. *Id.*, at 360 and n. 2. Since the judge found that a New York statute compelled evaluation under the more lenient standard, the defendant was found guilty. This Court reversed, stating that "[t]he reasonable-doubt standard plays a vital role in the American scheme of criminal procedure," *id.*, at 363, and holding explicitly "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, at 364.

We imply no retreat from the doctrine of *Winship* when we observe that it was a different case from that before us now. There the trial judge made an express finding that the State was not required to prove guilt beyond a reasonable doubt; in this case the State's burden of proof was emphasized and re-emphasized in the course of the complete jury instructions. Respondent nevertheless contends that, despite the burden of proof and reasonable-doubt instructions given by the trial court, the charge as to presumption of truthfulness impliedly placed the burden of proof on him. We do not agree.

Certainly the instruction by its language neither shifts the burden of proof nor negates the presumption of innocence accorded under Oregon law. It would be possible perhaps as a matter of abstract logic to contend that any instruction suggesting that the jury should believe the testimony of a witness might in some tangential respect "impinge" upon the right of the defendant to have his guilt proved beyond a reasonable doubt. But instructions bearing on the burden of proof, just as those bearing on the weight to be accorded different types of testimony and other familiar subjects of jury instructions, are in one way or another designed

to get the jury off dead center and to give it some guidance by which to evaluate the frequently confusing and conflicting testimony which it has heard. The well-recognized and long-established function of the trial judge to assist the jury by such instructions is not emasculated by such abstract and conjectural emanations from *Winship.*

It must be remembered that "review by this Court of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative. judgment of a state in so basic an exercise of its jurisdiction." *McNabb* v. *United States,* 318 U. S. 332, 340 (1943). In this case, while the jury was informed about the presumption of truthfulness, it was also specifically instructed to consider the manner of the witness, the nature of the testimony, and any other matter relating to the witness' possible motivation to speak falsely. It thus remained free to exercise its collective judgment to reject what it did not find trustworthy or plausible. Furthermore, by acknowledging that a witness could be discredited by *his own* manner or words, the instruction freed respondent from any undue pressure to take the witness stand himself or to call witnesses under the belief that only positive testimony could engender disbelief of the State's witnesses.

The jury here was charged fully and explicitly about the presumption of innocence and the State's duty to prove guilt beyond a reasonable doubt. Whatever tangential undercutting of these clearly stated propositions may, as a theoretical matter, have resulted from the giving of the instruction on the presumption of truthfulness is not of constitutional dimension. The giving of that instruction, whether judged in terms of the reasonable-doubt requirement in *In re Winship, supra,* or of offense against "some principle of justice so rooted in

the traditions and conscience of our people as to be ranked as fundamental," *Snyder* v. *Massachusetts,* 291 U. S. 97, 105 (1934), did not render the conviction constitutionally invalid.

*Reversed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

Respondent was found guilty of armed robbery and assault, after the jury had been charged, in pertinent part, as follows:

> "The law provides for certain disputable presumptions which are to be considered as evidence.
>
> "A presumption is a deduction which the law expressly directs to be made from particular facts and is to be considered by you along with the other evidence. *However, since these presumptions are disputable presumptions only, they may be out-weighed or equaled by other evidence. Unless out-weighed or equaled, however, they are to be accepted by you as true.*
>
> "The law presumes that the defendant is innocent, and this presumption follows the defendant until guilt is proved beyond a reasonable doubt.
>
> *"Every witness is presumed to speak the truth. This presumption may be overcome by the manner in which the witness testifies, by the nature of his or her testimony, by evidence affecting his or her character, interest, or motives, by contradictory evidence, or by a presumption.*
>
> "Burden of Proof. The burden is upon the State to prove the guilt of the defendant beyond a reasonable doubt." (Emphasis added.)

A timely objection was taken to the part instructing upon the presumption of truthfulness. In my view

the charge permitted the jury to convict even though the evidence may have failed to establish respondent's guilt beyond a reasonable doubt, and therefore denied respondent due process of law.

The charge directed the jury to find that the State's witnesses had spoken the truth, unless the presumption of truthfulness were "overcome" by demeanor, impeachment, or contradictory evidence. This instruction followed an earlier instruction that a presumption could be rebutted by other evidence which "out-weighed or equaled" the presumption, but that otherwise "the law expressly direct[ed]" that a finding be made in accordance with the presumption. Considered together, these instructions clearly required the jury to believe a witness' testimony until his or her untruthfulness had been demonstrated by evidence making it appear as likely as not that the testimony was false.[1] Since the State's case rested almost entirely upon the testimony of two eyewitnesses and two police officers, see *ante,* at 142, and since respondent neither called witnesses nor took the stand himself, the practical effect of the court's instructions was to convert the State's burden of proving guilt beyond a reasonable doubt to proving guilt by a preponderance of the evidence.[2]

---

[1] Due to the structuring of the instructions it is conceivable that the jurors would have understood that, since the presumption of innocence could be overcome only by proof of guilt beyond a reasonable doubt, the presumption of truthfulness could likewise be overcome only by evidence of untruthfulness beyond a reasonable doubt. If the instructions were in fact understood in this manner, the ensuing arguments concerning the unconstitutionality of the instructions would follow *a fortiori.*

[2] The courts of appeals in every circuit have disapproved of presumption-of-truthfulness instructions and have often expressed their objections in terms of constitutional values. See *McMillen* v. *United States,* 386 F. 2d 29 (CA1 1967); *United States* v. *Bilotti,* 380 F.

152

The reduction of the prosecution's burden of persuasion to a preponderance clearly conflicts with the Due Process Clause guarantee that an accused shall not be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U. S. 358, 364 (1970). In *Cool* v. *United States,* 409 U. S. 100 (1972), we held that an "unacceptable risk" existed that the jury might have understood an instruction—that certain defense testimony could properly be considered if found to be true beyond a reasonable doubt—as requiring that the defense testimony be considered *only* if believed beyond a reasonable doubt. *Id.,* at 102 n. 3. Over a dissent which asserted that the Court was parsing instructions and engaging in semantical distinctions without considering the trial court's charge to the jury as a whole, *id.,* at 107–108, the instruction was found "fundamentally inconsistent" with our *Winship* decision, since a possibility existed that exculpatory testimony—that would have

2d 649 (CA2 1967); *United States* v. *Evans,* 398 F. 2d 159 (CA3 1968); *United States* v. *Safley,* 408 F. 2d 603 (CA4 1969); *United States* v. *Reid,* 469 F. 2d 1094 (CA5 1972); *United States* v. *Stroble,* 431 F. 2d 1273 (CA6 1970); *United States* v. *Dichiarinte,* 385 F. 2d 333 (CA7 1967); *United States* v. *Gray,* 464 F. 2d 632 (CA8 1972); the instant case, *Naughten* v. *Cupp,* 476 F. 2d 845 (CA9 1972); *United States* v. *Birmingham,* 447 F. 2d 1313 (CA10 1971); *Stone* v. *United States,* 126 U. S. App. D. C. 369, 379 F. 2d 146 (1967). But the courts have been particularly concerned about the impact that such instructions might have when the defendant has not offered testimony. See *United States* v. *Safley, supra,* at 605; *United States* v. *Boone,* 401 F. 2d 659, 661 (CA3 1968); *United States* v. *Evans, supra,* at 162; *United States* v. *Dichiarinte, supra,* at 339; *Stone* v. *United States, supra,* at 370, 379 F. 2d, at 147; *United States* v. *Johnson,* 371 F. 2d 800, 805 (CA3 1967); *United States* v. *Meisch,* 370 F. 2d 768, 774 (CA3 1966). However, even in a situation where the defendant has introduced rebuttal testimony, the impact of the presumption on the parties will be imponderable and not necessarily equal. See *McMillen* v. *United States, supra,* at 33.

created a reasonable doubt in the minds of the jurors—had been rejected because not believable beyond a reasonable doubt. *Id.*, at 104. Thus, the evil in *Cool* was the unacceptable risk that jurors would understand the instruction to require that defense testimony be rejected out of hand which, if considered, might have given rise to a reasonable doubt about the defendant's guilt. Respondent suffered no less a constitutional deprivation when, in unequivocal terms, the jury was instructed to accept the statements of prosecution witnesses as true even though the jurors might have entertained substantial and reasonable doubts about the veracity of the testimony—but not sufficient to conclude that it was as likely as not that the testimony was false.

Moreover, the presumption-of-truthfulness instruction itself is constitutionally defective. In *Turner* v. *United States*, 396 U. S. 398 (1970), we approved an inference of "knowledge" from the fact of possessing smuggled heroin, because " '[c]ommon sense' . . . tells us that those who traffic in heroin will *inevitably* become aware that the product they deal in is smuggled," *id.*, at 417; at the same time, we rejected the presumption that possession of unstamped cocaine was prima facie evidence that the drug was not purchased in or from the original stamped container, because a *"reasonable possibility"* existed that the defendant "stole the cocaine himself or obtained it from a stamped package in possession of the actual thief." *Id.*, at 423–424 (emphasis added). In the instant case, common sense does not dictate that a prosecution witness who has sworn or affirmed to tell the truth will *inevitably* do so, and there is surely a *reasonable possibility* that he will fail to do so.[3] Since here no defense witnesses were

---

[3] The origins of the presumption that witnesses will testify truthfully appear to extend back at least into the 19th century, see

called, the practical effect of the presumption of truthfulness was to permit the jury to find each and every element of the crimes charged without requiring that the elements be proved beyond a reasonable doubt. The presumption itself thus violates the mandate of *Winship* that "every fact necessary to constitute the crime" be proved beyond a reasonable doubt. See *Barnes* v. *United States,* 412 U. S. 837, 854 (1973) (BRENNAN, J., dissenting).

Viewed in the context of the overall charge to the jury, the instructions were no less objectionable. To be sure— as had been the case in *Cool*—the jurors were instructed that guilt must be proved beyond a reasonable doubt. However, they were also directed in effect to ignore certain doubts they might have entertained concerning the credibility of the prosecution's witnesses. Had the instructions concerning the reasonable-doubt standard necessarily *contradicted* the instructions dealing with the burden of proof needed to overcome the truthfulness presumption, the constitutional objection might have been dissipated. But there is, in my view, an "unacceptable risk" that the jury understood the instructions unambiguously to require that they put to one side certain doubts about the credibility of the testimony they had heard and only then determine whether the evidence

_____

*ante,* at 144–145, when it was a widely held belief that a willful violation of the oath would expose the witness "at once to temporal and to eternal punishment." T. Starkie, Law of Evidence 29 (10th Am. ed. 1876). In addition, at that time many of the common-law rules of incompetency were applied to disqualify individuals from testifying for reasons which today would merely be grounds for impeachment. See generally 9 W. Holdsworth, History of English Law 177–197 (1926); C. McCormick, Evidence, c. 7 (2d ed. 1972). Since that time, the rationale underlying the presumption has been substantially undercut.

supported a finding of guilt beyond a reasonable doubt.[4] I therefore conclude that the instructions are constitutionally infirm.

In this circumstance, the constitutional error inhering in the instruction cannot properly be viewed as harmless beyond a reasonable doubt. See *Chapman* v. *California,* 386 U. S. 18, 24 (1967). The reasonable-doubt standard reduces the risk that an error in factfinding could deprive an innocent man of his good name and freedom. See *In re Winship, supra,* at 363–364. It also impresses the jurors with their solemn responsibility to avoid being misled by suspicion, conjecture, or mere appearance, and to arrive at a state of certainty concerning the proper resolution of the relevant factual issues. Here, the truth-finding function of the jury was invaded and the State's burden of proving guilt beyond a reasonable doubt was diminished. When the reasonable-doubt standard has been thus compromised, it cannot be said beyond doubt that the error "made *no* contribution to a criminal conviction." *Harrington* v. *California,* 395 U. S. 250, 255 (1969) (dissenting opinion). Rather, such an error so conflicts with an accused's right to a fair trial that the "infraction can never be treated as harmless error." *Chapman* v. *California, supra,* at 23.

---

[4] The majority's reliance on *Boyd* v. *United States,* 271 U. S. 104 (1926), *ante,* at 146–147, is misplaced. There it was found that an "ambiguous" statement in the charge in a criminal case was likely understood in its harmless sense because of additional curative instructions. *Id.,* at 107. The disputed instruction, even if erroneous, concerned a question of law under the Harrison Anti-Narcotic Act not of constitutional dimension, and the Court relied on the fact that a proper objection had not been taken to the charge. See *id.,* at 107–108.