PEOPLE v JAMES McCRACKEN (ON REMAND)

PEOPLE v O'CONNELL (ON REMAND)

Docket Nos. 51587, 51588. Submitted June 6, 1978, at Detroit.—Decided February 5, 1979. Opinion on remand filed October 8, 1980. Leave to appeal applied for.

James L. McCracken and James D. O'Connell were convicted of receiving and concealing stolen property valued at over $100 and of conspiracy to break and enter a dwelling house with intent to commit larceny, Wayne Circuit Court, Michael L. Stacey, J., and appealed. The Court of Appeals reversed the conspiracy conviction of O'Connell, and affirmed the convictions of receiving and concealing stolen property and McCracken's conspiracy conviction, 88 Mich App 286 (1979). Defendants sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, vacated the Court of Appeals affirmance, 408 Mich 926 (1980), and remanded to the Court of Appeals for reconsideration in light of *People v Wright*, 408 Mich 1 (1980), which held that a jury instruction that the law presumes that every person intends the natural, probable and legitimate consequences of his own willful and voluntary acts unconstitutionally shifted the burden of proof to the defendant. On remand, *held:*

1. The jury instruction given in this case, which was essentially the same as the one condemned in *People v Wright,* was constitutionally infirm because it possibly shifted the burden of proof to the defendants.

2. Because the trial was held prior to the Supreme Court's ruling, the instruction is subject to review using a harmless error standard, looking to the effect of the instruction upon the validity of the convictions in the setting of the case. Such a review necessitates consideration of the evidence and testimony presented in the case.

3. The instruction was harmless beyond a reasonable doubt

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 754.
[2] 75 Am Jur 2d, Trial § 924 *et seq.*

as to McCracken, against whom the evidence was overwhelming. Because the evidence against O'Connell was not so strong, it cannot be said that the erroneous instruction was harmless beyond a reasonable doubt as to him.

Affirmed as to defendant McCracken; reversed and remanded as to defendant O'Connell.

1. Criminal Law — Jury Instructions — Burden of Proof.

An instruction to a jury that "the law presumes that every man intends the legitimate consequences of his own acts" and that "wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent" is constitutionally infirm as it may possibly shift the burden of proof to the defendant.

2. Criminal Law — Jury Instructions — Harmless Error.

An allegedly improper jury instruction which was given in a trial held prior to a ruling holding such an instruction to be constitutionally infirm is subject to review using a harmless error analysis, which looks to the effect of the erroneous instruction upon the validity of the defendant's conviction in the setting of the particular case.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman* (in O'Connell), and *Timothy C. Scallen* (in McCracken), Assistants Prosecuting Attorney, for the people.

*Constance E. Cumbey,* for defendant McCracken on appeal.

*Carl Ziemba,* for defendant O'Connell on appeal.

Before: Bashara, P.J., and Bronson and C. W. Simon, Jr.,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

ON REMAND

PER CURIAM. Defendants were convicted of receiving and concealing stolen property valued over $100, MCL 750.535; MSA 28.803, and of conspiracy to break and enter a dwelling house with intent to commit larceny therein, MCL 750.157a, 750.110; MSA 28.354(1), 28.305. O'Connell's conspiracy conviction was reversed in *People v McCracken*, 88 Mich App 286; 276 NW2d 609 (1979). Defendants sought leave to appeal this Court's affirmance of the receiving and concealing stolen property convictions to the Michigan Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated the affirmance, 408 Mich 926 (1980), and remanded the matter to this Court for reconsideration of the issues raised in light of the recent decision in *People v Wright*, 408 Mich 1; 289 NW2d 1 (1980).

The defendants in *Wright* were convicted of conspiracy to deliver heroin and of delivery of heroin. They argued on appeal that the following unobjected-to jury instruction impermissibly shifted the burden of proof to the defendants:

"[U]nless the testimony satisfies you of something else * * * [t]he law presumes that every man or woman intends the natural, the probable, and the legitimate consequences of his or her own willful and voluntary acts." *Id.,* 11.

This Court reversed the convictions on the ground that the defendants' rights to a presumption of innocence were violated by the erroneous instruction. *People v Wright*, 78 Mich App 246; 259 NW2d 443 (1977).

In reviewing the Court of Appeals opinion, the

Supreme Court relied upon the decision in *Sandstrom v. Montana,* 442 US 510, 513; 99 S Ct 2450; 61 L Ed 2d 39 (1979). The Court in *Sandstrom* held that the due process clause was violated by the instruction, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts". The Court concluded that the jury may have interpreted the presumption as being either conclusive or as placing the burden of proof on the defendant. Justice Brennan wrote for a unanimous Court:

"As in *Morissette [v United States,* 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952)] and *[United States v] United States Gypsum Co,* [438 US 422; 98 S Ct 2864; 57 L Ed 2d 854 (1978)], a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury. The instruction announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt * * * every fact necessary to constitute the crime * * * charged,' 397 US, at 364, and defendant was deprived of his constitutional rights as explicated in *Winship [In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970)].

"A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden

was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney v. Wilbur*, 421 US 684 [95 S Ct 1881; 44 L Ed 2d 508] (1975)." *Id.*, 523-524.

Even though correct instructions had been given to the jury on the presumption of innocence and the burden of proof, the United States Supreme Court held that the single unconstitutional charge required reversal.

The Michigan Supreme Court held in *Wright* that the opinion in *Sandstrom* was controlling and that the instruction quoted above was erroneous. *Wright, supra,* 22, 23. In addition, the following instructions were also held to be constitutionally invalid based upon the rationale of *Sandstrom:*

"But in connection with all this, *unless the testimony satisfies you of something else,* you are warranted in holding a party responsible for the natural, the probable, and the legitimate consequences of his or her acts.

\* \* \*

"Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent." *Id.*, 24, 25. (Emphasis added.)

In the case at bar, the trial court instructed the jury as follows:

"The question of intent is one that is hard to establish directly because grown persons do not always disclose the object they have in view in any acts in which they may indulge, and you have to gather the intent from the character of the act, the circumstances surrounding it and from conduct of a like character which may appear as tending to aid you in finding and discovering it. But in connection with all this, *unless the testimony satisfied you of something else you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his acts. The*

*intent may be presumed from the doing of a wrongful, fraudulent or illegal act. But this inference or presumption is not necessarily conclusive. The law presumes that every man intends the legitimate consequences of his own acts. Wrongful acts, knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent."* (Emphasis added.)

Based upon the holding of *Wright,* we conclude that the above instruction is constitutionally infirm as possibly shifting the burden of proof to the defendants.

The Court in *Wright* was faced with determining whether the plain error rule or the harmless error rule is the correct standard for fashioning a remedy for constitutionally invalid jury instructions. *Sandstrom* did not resolve the issue, as it had not been considered by the state court. 442 US 510, 526. The *Wright* Court concluded that automatic reversal is not required by Federal law. The Court further held:

"We regard harmless error analysis as appropriate in this case where the trial preceded authoritative disapproval of these instructions by this Court and the United States Supreme Court. We do not, however, foreclose the possibility that we might, as a matter of Michigan constitutional law or in the exercise of our supervisory power, adopt a more stringent approach to protect against continued use of these improper instructions should they recur in post-*Sandstrom,* post-*Wright*-and-*Perez* cases.

"Whether a different rule should be announced for such cases should not be decided in this case involving a pre-*Sandstrom,* pre-*Wright*-and-*Perez* trial. Our conclusion that harmless error analysis may be applied in this case does not, however, detract from our concern for the extent of judicial time and public and private funds spent, and individual liberties lost, while our appellate courts reject charges containing burden-shifting type

instructions. The ultimate responsibility of correctly instructing the jury rests with the trial judge. These considerations, coupled of course with the more vital fact that the instructions disapproved today are unfair, move us to direct that trial courts discontinue the use of such instructions." *Wright, supra,* 29.

The Court reviewed the facts in each case and concluded that Perez was entitled to a new trial, but that the error was harmless as to Wright.

Since defendants' trial occurred prior to *Sandstrom, Wright* and *Perez,* we hold that the harmless error analysis is also applicable herein.

The harmless error rule was aptly described in *Wright:*

"The watershed for determining whether an erroneous jury instruction affected the outcome of a trial is the harmless-error rule of *Chapman v California,* [386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967)] *supra.* The purpose of that rule is to 'block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial'. *Id.,* 22. Constitutional errors in instructing the jury 'which in the setting of a particular case are so unimportant and insignificant' do not require automatic reversal of a conviction. *Id.* The harmless-error rule thus recognizes that in determining the effect an erroneous instruction has upon the validity of the defendants' conviction, cognizance must be taken of the fact 'that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge'. *Cupp v Naughten,* 414 US 141, 147; 94 S Ct 396; 38 L Ed 2d 368 (1973)." *Wright, supra,* 30-31.

Scrutiny of the trial transcript is therefore necessary in order to consider the effect of the erro-

neous instruction upon the trial. The victim testified that he was a coin collector. In the summer of 1973 his home was burglarized, at which time valuable coins and silver certificates were stolen.

Three witnesses were given transactional immunity in exchange for their testimony at trial. The witnesses stated that defendant McCracken had conspired with them to break into the victim's home and confiscate the coins, which would later be sold to defendant O'Connell. McCracken did not participate in the robbery, but received the goods after the fact, according to the three witnesses. Other evidence was presented that McCracken had given some of the stolen goods to his girlfriend. These items were recovered by the police and identified by the victim as being his missing property. Testimony was also introduced that McCracken admitted encouraging some men to rob the victim. McCracken then told the witness that he had a lawyer-fence who would unload the stolen merchandise.

McCracken testified that he was not involved in the alleged crimes in any way. He denied ever having possession of the goods. The facts in the case against McCracken are, therefore, similar to the facts in the case of *Wright, supra.* It was a matter of the prosecution witnesses' word that Wright was involved in the conspiracy versus Wright's allegation that he was not involved. The Court stated that if the jury believed the prosecution witnesses, Wright's intent to commit the offenses was established. *Wright, supra,* 31. Similarly, McCracken's intent was not an issue at trial in that the testimony of the robbers, if believed, established McCracken's intent to receive or conceal stolen property. In view of the overwhelming evidence against McCracken, we hold that the

erroneous instruction was harmless beyond a reasonable doubt.

On the other hand, the evidence against O'Connell is not abundant. One of the robbers who testified at trial stated that he went with McCracken to O'Connell's office prior to the robbery. While waiting in an adjoining room, he overheard O'Connell tell McCracken that he could get rid of the coins for him. O'Connell was not present during the planning of the robbery. The only other evidence presented against O'Connell was again elicited from the robbers who stated that they accompanied McCracken when he drove to O'Connell's office with some of the stolen goods. McCracken entered O'Connell's office while the others waited in the car. When he returned, he did not have the property. O'Connell testified that he did not receive the stolen goods.

Although it can be said that the evidence against O'Connell leads to the inference that he knew the goods were stolen when he received them, the opposite inference is also as likely. The fact that O'Connell was overheard telling McCracken that he could get rid of the coins does not mean that he knew he would be selling stolen coins for McCracken. In view of the erroneous jury instruction, it is possible that the jury considered it O'Connell's duty to dispute the prosecutor's assertion that he knew the goods were stolen. Therefore, we cannot say that the infirm instruction was harmless beyond a reasonable doubt as to O'Connell, and we reverse his conviction.

Affirmed as to McCracken; reversed and remanded for a new trial as to O'Connell.

C. W. Simon, Jr., J., did not participate.