J. JONES, J.,
concurring in part and dissenting in part.
I concur with the Court’s opinion except for (1) Part II.A.4, regarding the conspiracy jury instruction, (2) the reference in Part II.C. to the instruction as constituting reversible error, and (3) the conclusion in Part III that the conspiracy conviction must be vacated. I do not believe that the misnumbering on the instruction was such as to cause jury confusion and, in any event, it did not constitute fundamental error. I would uphold the conspiracy conviction.
Instruction No. 17 was not fatally defective. Although the seventh element of the conspiracy charge was misnumbered by the addition of a handwritten “5” over the typed “7,” the renumbering did not change the meaning or context of the instruction. The sixth element of the conspiracy charge called for proof that “one of the parties to the agreement performed at least one of the following acts,” then listed four factual situations, each stating dates, Draper’s name, and a description of events that were directed toward commission of the murder of Cassie Stoddart. The misnumbered element, “such act was done for the purpose of carrying out the agreement,” contained none of these factual situations. The misnumbered item had the same margin as the other six elements of the conspiracy charge, rather than the indented margin of the four factual situations listed in the sixth element. The first word in the misnumbered element began with a lower case letter, indicating its connection to the other six elements, rather than to the four factual situations listed under the sixth element, in all of which the first word began with a capital letter. The word “act” in the misnumbered element could only refer back to the “following acts” referenced in the introduction of the sixth element, since that word appears nowhere else in the instruction. It is unlikely that a rational jury’s attention would be focused on the numeral five that had been renumbered, rather than on the substance of the text, which was the critical part necessary for the jury to carry out its responsibility.
Turning to the substance of Instruction No. 17, any infirmity in the misnumbered seventh element was cured by the substance of the four factual situations listed under element six. The jury was instructed to find that Draper had performed at least one of those factual situations and it must be assumed that the jury complied with the instruction. Pursuant to the first five elements of the instruction, the jury found that Draper had agreed with Adameik to commit the crime of murder in the first degree. Each of the factual situations in the sixth element described certain facts and then ended with the conclusion that the actions were performed to commit, or for the commission of, the murder of Cassie Stoddart, which was the subject of the agreement. Had this concluding phrase been left off of any of the four factual situations, Draper may have a better argument. However, the concluding phrase on each of the four factual situations essentially furnished the seventh element of the conspiracy, making the misnumbered seventh element largely superfluous. Rational jurors could not have concluded that any of the four factual situations was performed for any purpose other than to cany out the subject matter of the agreement — commission of the murder of Cassie Stoddart.
Fm’thermore, jury instructions are to be viewed as a whole because “[i]t is well estab *603 lished that [an] instruction ‘may not be judged in artificial isolation’ but must be considered in the context of the instructions as a whole and the trial record.” Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385, 399 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973)). Instruction No. 17-A instructed, “The defendant is not guilty of Conspiracy if the defendant in good faith withdrew by informing another party to the conspiracy of the defendant’s withdrawal before any party performed an act for the purpose of carrying out the agreement.” (emphasis added) Reading Instruction Nos. 17 and 17-A together, it is clear that the State was required to prove Draper had performed one of the four described factual situations for the purpose of carrying out the agreement in order to be convicted of conspiracy.
This is not a case where an element of the offense was omitted. Rather, the instruction was complete, but one element was merely mislabeled. However, even if one were to consider this as an omitted element instruction, it would pass the harmless error test. In State v. Perry, we stated:
[W]here the jury instructions were only partially erroneous, such as where the jury instructions improperly omitted one element of a charged offense, the appellate court may apply the harmless error test, and where the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rationale jury could have found that the State failed to prove that element, the constitutional violation may be deemed harmless.
150 Idaho 209, 224, 245 P.3d 961, 976 (2010). The evidence in this case overwhelmingly supports Draper’s conviction for conspiracy to commit first degree murder. No rational jury could have found that the State failed to prove the seventh element of the charged offense. Although Draper does contest that element, such contest must be viewed in context of the six elements of the charged offense which the jury found to have been proven beyond a reasonable doubt. The jury found that, “On or between the 22nd and 23rd days of September, 2006, in the State of Idaho, the defendant Brian Lee Draper and Torrey Michael Adameik agreed to commit the crime of murder in the first degree, [Draper] intended that the crime would be committed, [and that] one of the parties to the agreement performed at least one of the following acts.” The instruction then lists the four previously discussed factual situations, all of which directly involved Draper and all of which were specifically directed toward commission of the murder of Cassie Stoddart — purchasing the knives to use in the commission of the murder, driving to the residence where she was located that night to commit the murder, retrieving the clothing and murder weapons for use in the commission of the murder, and lying in wait in the residence in preparation for the commission of the murder. In light of the jury’s undisputed finding of agreement and intent to kill Cassie Stoddart, these acts are logically inseparable from a finding that they were committed in furtherance of the murder agreement. Despite Draper’s feeble protestations, no rational jury could have found that any one of the four factual situations was performed for any other purpose than to commit the parties’ agreed and intended crime — the first degree murder of Cassie Stoddart. This is particularly true with respect to the second factual situation — that Draper traveled to the Whispering Cliffs residence with Adameik “to commit the murder of Cassie Stoddart” — because Draper proclaimed that to be the ease in the video recording. There is no possibility a rational jury could have found otherwise. Thus, even if there were an error, it was harmless.
There is overwhelming evidence in the record to support Draper’s conviction for first degree murder and to support his conviction for conspiring to commit that murder. Any contention that Draper only intended to scare Stoddart as a joke, and not to murder her, rings hollow in light of his first degree murder conviction. I would uphold both convictions. They are inseparable.