12-3850-cr
United States v. Lewis

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of October, two thousand thirteen.

PRESENT: GERARD E. LYNCH,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges*.

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                            No. 12-3850-cr

JOYCE LEWIS, also known as "Joyce Lewis Daniels,"

*Defendant - Appellant*,

PAULETTE M. GABBIDON, also known as "Paulette Hibbert," "Paulette Webb," "Alliyah Adstroy," "Alliyah Hibbert," JASON LEWIS, JAMON LEWIS,

*Defendants*.*

_____

---

* The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

FOR APPELLANT:          COLLEEN P. CASSIDY, Federal Defenders of New York, Inc., Appeals Bureau, New York, New York.

FOR APPELLEE:           REBECCA MERMELSTEIN, Assistant United States Attorney (Justin Anderson, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Kenneth M. Karas, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendant-appellant Joyce Lewis appeals from a December 12, 2012 judgment of the district court convicting her of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344, 1349, and sentencing her to imprisonment for a year and a day, three years of supervised release, and a $300,000 fine. We assume the parties' familiarity with the facts and procedural history of this case, which we summarize only so far as is necessary to understand our rulings.

Lewis argues that the district court erred in instructing the jury that it could find Lewis guilty of conspiracy if she "acted with a conscious purpose to avoid learning the truth" about its criminal objective. Lewis offers three challenges to this instruction. First, she posits that a recent Supreme Court decision, Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060 (2011), altered the standard for proving conscious avoidance and argues that the district court should have used Global-Tech's language rather than that enunciated in earlier Second Circuit precedents. Second, Lewis claims that the district court confused two separate issues,

2

the state of mind required for a defendant to join a conspiracy, and the knowledge necessary for a defendant to have understood that conspiracy's specific objectives. Third, Lewis argues that the government did not establish a sufficient factual predicate to merit a conscious avoidance instruction.

I.      Global-Tech's Impact on Second Circuit Law

Global-Tech did not unsettle circuit law. As we recently explained in United States v. Goffer, 721 F.3d 113 (2d Cir. 2013), the decision in Global-Tech "synthesized conscious avoidance holdings from [across] circuit[s]"; it "did not alter or clarify the doctrine, but instead identified the common ground among the Courts of Appeals." Id. at 128. Thus, in Goffer, we held that the district court did not err by declining to give the jury a specific warning that "reckless" behavior was insufficient to prove deliberate avoidance because Second Circuit law had never required that instruction before. Id.

Here, the same logic applies. The district court may not have used Global-Tech's phrasing in its instruction, but it was not required to do so. What is more, even if Global-Tech had changed the state of the law, the district court's instructions were consistent with its holding. Lewis calls attention to Global-Tech's insistence that a defendant must "take deliberate actions to avoid learning [a] fact" to be guilty of conscious avoidance. 131 S. Ct. at 2070. But the district court adopted the same standard, instructing that the defendant must "deliberately decide[ ] not to confirm a key fact" and "act[ ] with a conscious purpose to avoid learning the truth." In both formulations, a jury must find that a defendant decided to ignore an inconvenient truth, and then took steps to do so.

3

II.     Standard for Proving Intention to Join a Conspiracy

As we explained in United States v. Ferrarini, "[t]here are two aspects of knowledge in a conspiracy: 1) knowing participation or membership in the scheme charged[,] and 2) some knowledge of the unlawful aims and objectives of the scheme." 219 F.3d 145, 154-55 (2d Cir. 2000) (internal citations omitted). Although "[c]onscious avoidance may not be used to support a finding as to the former, . . . it may be used to support a finding with respect to the latter." Id. at 155.

If the district court had conveyed to the jury that one could innocently join an undertaking without knowing of its illegal character, and that conscious avoidance of later indications of wrongful behavior was sufficient to make that person a member of a criminal conspiracy, such an instruction would have been erroneous. But read as a whole, the court's instructions did not mislead the jury in this way. See Cupp v. Naughten, 414 U.S. 141, 146-47 (1973) (holding that a specific jury instruction "must be viewed in the context of the overall charge"). At the beginning of the charge on the conspiracy count, the district court defined a conspiracy as an "*unlawful* combination or agreement between two or more persons to *violate the law*." (emphases added). It then reiterated this element several times, explaining that there must be "a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act," that the agreement is one "to disobey or disregard the law," and that "the alleged conspirators agreed to work together in furtherance of the unlawful scheme."

Subsequently, the district court alerted the jury to the very distinction Lewis relies on, specifically noting that conscious avoidance "cannot be used as a substitute for a finding that the defendant knowingly agreed to a joint undertaking," and that the jury could find the defendant guilty "if, and only if, you find that she knowingly and intentionally joined the *conspiracy charged in the indictment*." (emphasis added). The court then instructed that only if the jury found beyond a reasonable doubt that Lewis had entered such an agreement, could it then rely on a finding of conscious avoidance to decide whether she knew that the specific "objective or goal" of that agreement "was to engage in bank fraud."

Taken together, the court's clear instruction that conscious disregard cannot prove intent to join a conspiracy, and its accurate charge that a conspiracy requires an intentional agreement to do something unlawful, constituted a correct statement of the law.

III.    Factual Predicate for the Conscious Avoidance Instruction

A conscious avoidance instruction may only be given if two factual predicates are met. First, "the defendant [must] assert[ ] the lack of some specific aspect of knowledge required for conviction." Ferrarini, 219 F.3d at 154 (citation omitted). On the stand, Lewis disclaimed any knowledge of her alleged co-conspirators' schemes. Second, there must be "evidence … that [allows] a rational juror [to] reach [the] conclusion beyond a reasonable doubt . . . that [the defendant] was aware of a high probability [of the criminal objective] and consciously avoided confirming th fact." Id. (citation omitted). "Red flags" about the legitimacy of a transaction "can be used to show both actual knowledge and conscious avoidance." United States v. Ferguson, 676 F.3d 260, 278 (2d Cir. 2011).

5

The district court properly found that there were sufficient "red flags" to raise the possibility that Lewis consciously avoided confirming her co-conspirators' fraudulent aim. During cross-examination, Lewis admitted that she never read the papers she submitted to obtain a mortgage for her home in New York, explaining that she "signed the papers as they told me." As she acknowledged, those papers were prepared by her son and his girlfriend and contained false information about her income, marital status, and previous employment. Lewis had reason to question the application's veracity. Four months earlier, her son Jason had asked her to co-sign an application for a home equity loan on his house in New Jersey. According to her testimony, she later learned that the loan was not what it seemed, that Jason had not listed her as a guarantor, but rather had used her credentials to take out money in her name, not his. Rather than investigate further, Lewis wrote several checks to cover the monthly payments for that loan. And rather than carefully check the application prepared by Jason and his girlfriend for her own home, Lewis admits that she signed the document in at least twenty-five places without reading a word. Lewis does not argue that this evidence was insufficient to permit a reasonable jury to find actual knowledge of the scheme; the same evidence would equally permit a finding of conscious avoidance.

Lewis argues that other purported "red flags" relied upon by the government only signaled a mother's innocent trust in her sons' character. In particular, Lewis claims that she had no reason to view large cash gifts from her sons as anything other than signs of their gratitude for all she had done for them. But as explained above, even if the district

6

court had credited that argument as a persuasive account of Lewis relationship with her children, other aspects of her dealings with Jason should have given her pause.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7