[Cite as *State v. Williams*, 2016-Ohio-4945.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DAVID WILLIAMS, IV | : | Case No. 16-CA-01 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Licking County
                                 Court of Common Pleas, Case No.
                                 2015 CR 608

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                July 12, 2016

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KENNETH W. OSWALT                     WILLIAM T. CRAMER
Licking County Prosecutor             470 Olde Worthington Road, Suite 200
20 S. Second Street, Fourth Floor     Westerville, Ohio 43082
Newark, Ohio 43055

*Baldwin, J.*

{¶1}    Appellant David Williams, IV, appeals a judgment of the Licking County Common Pleas Court convicting him of aggravated robbery (R.C. 2911.01(A)(1), (3)), felonious assault (R.C. 2903.11(A)(1),(2)) and possession of cocaine (R.C. 2925.11((A),(C)(4)(a)), with a repeat violent offender specification.  Appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On August 20, 2014, Joe Messina, Sr. was paid $1,000.00 in cash for performing a concrete job.  Messina gave his son $200 to pay bills, and kept the other $800 with him.  Messina then went to a bar called Jugz, where he had two or three drinks, paying for the drinks with the cash from the concrete job.  Messina moved from Jugz to the Dew Drop Inn, where he had a few more drinks.  He had seven new $100 bills with him, and some smaller bills.

{¶3}    Messina saw appellant at a table alone.  He had never met appellant, but sat down and struck up a conversation.  Messina started to leave the Dew Drop Inn after about an hour, and appellant left at the same time.  Because they were going in the same direction, the pair walked together.  As they approached Messina's apartment, appellant asked if he had anything cold to drink.  Messina invited him to his apartment, where he gave appellant a Four Loko drink from his refrigerator.  Messina admitted that they also had a hit of cocaine, which he had at the apartment.

{¶4}    Messina fell asleep while appellant was still in the apartment.  Messina was awakened when he was stabbed in the neck.  Appellant was on top of him, choking him and jabbing him with a knife.  Messina blocked the knife and pushed appellant off.  He

took the knife from appellant and stabbed appellant in the neck. Appellant went to the kitchen, where he tried to get a knife out of a sheath. Messina ran for the stairs. Appellant tackled Messina, breaking Messina's ribs and his arm. Appellant landed on top of Messina and started shaking him. During the struggle, appellant took Messina's money. Messina began pounding on the wall and yelling for help, and appellant fled.

{¶5} The next morning, Detective Timothy Fleming contacted appellant, who had a cut on his neck and on his knuckle. When asked if he had anything in his pockets, appellant turned out his pockets, revealing a small amount of cash and a crack pipe with cocaine residue. Det. Fleming asked appellant to check his left rear pocket, and appellant produced seven new $100 bills. Appellant made several inconsistent statements about his whereabouts the night before, and was placed under arrest.

{¶6} Appellant was indicted by the Licking County Grand Jury with aggravated robbery, felonious assault, and possession of cocaine. The aggravated robbery and felonious assault charges included repeat violent offender specifications. Appellant was found guilty after jury trial of aggravated robbery, felonious assault, and possession of cocaine. The court thereafter found him to be a repeat violent offender. The court merged the convictions of aggravated robbery and felonious assault, and the State elected to have appellant sentenced for aggravated robbery. The court sentenced appellant to eleven years incarceration for aggravated robbery and one year incarceration for possession of cocaine, to run concurrently with each other but consecutively to the six year sentence on the repeat violent offender specification, for an aggregate term of seventeen years.

{¶7} Appellant assigns two errors to this Court on appeal:

{¶8}    "I.   THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT IT HAD A DUTY TO RECONCILE EVIDENTIARY CONFLICTS ON THE THEORY THAT EACH WITNESS TESTIFIED TO THE TRUTH AND THAT IT ONLY HAD TO EVALUATE CREDIBILITY IF IT WAS UNABLE TO RECONCILE THE EVIDENCE.

{¶9}    "II.   APPELLANT WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10, BY COUNSEL'S FAILURE TO OBJECT TO ERRONEOUS JURY INSTRUCTIONS."

I.

{¶10}  In his first assignment of error, appellant argues that the court erred by instructing the jury that it had a duty to reconcile evidentiary conflicts on the theory that each witness testified to the truth, and that it only had to evaluate credibility if it was unable to reconcile the evidence.

{¶11}  Appellant concedes that he failed to object to this instruction as required by Crim. R. 30(A), and we therefore must find plain error to reverse.  In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶12}  Appellant challenges the following instruction, which the court gave during its preliminary instructions to the jury:

If there are any conflicts in the evidence, it is your duty to reconcile the conflicts if you can on the theory that each witness has testified to the truth. If you cannot so reconcile the testimony, then it is within your province to determine whom you will believe and whom you will disbelieve.

{¶13} Tr. I, 128.

{¶14} Appellant relies on *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), in which the challenged instruction read:

Every witness is presumed to speak the truth. This presumption may be overcome by the manner in which the witness testifies, by the nature of his or her testimony, by evidence affecting his or her character, interest, or motives, by contradictory evidence, or by a presumption.

{¶15} *Id.* at 142.

{¶16} The United States Supreme Court found no constitutional violation in this instruction while recognizing that many federal courts of appeals had expressed disapproval of the instruction. The Supreme Court found that because the jury was instructed about the presumption of innocence and the state's duty to prove guilt beyond a reasonable doubt, any "tangential undercutting" of these propositions that may have theoretically resulted from the challenged instruction was not of constitutional dimension. *Id.* at 149.

{¶17} Appellant also relies on *United States v. LaRiche,* 549 F.2d 1088 (6th Cir. 1977), in which the challenged instruction read:

Every witness is presumed to speak the truth; however, if you find the presumption of truthfulness to be outweighed as to any witness, you will

give the testimony of that witness such credibility, if any, as you may think

it deserves.

{¶18}  *Id.* at 1093.

{¶19}  In finding no plain error in the giving of the instruction, the court concluded

that the trial court's instruction on factors which would tend to discredit the testimony of

witnesses vitiated what might otherwise have been plain error.  *Id.* at 1094.

{¶20}  The State cites to *United States v. Hyman,* 741 F.2d 906 (7th Cir. 1984), in

which the challenged instruction was similar to that in the case at bar:

> If there are conflicts in the evidence, it is your duty to reconcile the
>
> conflicts, if you can, on the theory that each witness has testified to the truth.
>
> If you cannot so reconcile the testimony, then it is within your province to
>
> determine whom you will believe and whom you will disbelieve. You should
>
> weigh the evidence and give credit to the testimony in light of your own
>
> experience and observations in the ordinary affairs of life.

{¶21}  *Id.* at 909.

{¶22}  In rejecting appellant's claim that the instruction was error, the court

concluded that this instruction was not a "presumption of truth" instruction that had met

with disapproval in several federal circuits.  *Id.* at 910.  Rather, the jury was told that if

there were irreconcilable conflicts in the evidence, then it was up to the jury to decide who

to believe.  *Id.*  Therefore, the instruction left the determination of witness credibility to the

jury, and there was no "presumption of truthfulness" charge to the jury.  *Id.*

{¶23}  As in *Hyman,* the challenged instruction did not constitute a presumption of truthfulness instruction.  Rather, the instruction left the determination of witness credibility to the jury.

{¶24}  Further, viewing the instruction in light of the entire charge to the jury, it is clear that the jury was properly instructed on the burden of proof, the presumption of innocence, and the manner in which to determine credibility of witnesses.  The court charged the jury in preliminary instructions:

> The law does not, however, require you to accept all the evidence I shall admit even though it may be competent.  In determining what evidence you will accept, you must make your own evaluation of the testimony given by each of the witnesses and determine the degree of weight you choose to give to that witness' testimony.

> The testimony of a witness may fail to conform to the facts as they occurred because that witness is intentionally telling you a falsehood, or perhaps because they did not accurately see or hear those things about which they have testified.  Perhaps their recollection of the events is poor or perhaps they have not expressed themselves clearly in giving their testimony.

> There is no magical formula by which a person evaluates testimony. You bring with you into this courtroom today all of the background and experience of your lives. In your everyday affairs you determine for yourselves the reliability or unreliability of statements that are made to you by other people. Those same tests that you use in your everyday dealings

are the same tests that you would apply here today as well as in your deliberations. They may consist of the interest or lack of interest of any witness in the outcome of the case; the bias or prejudice of a witness, if any; the age; the appearance; the manner in which the witness gives their testimony here on the witness stand; the opportunity that the witness had to observe the facts about which they are testifying; the probability or improbability of the witness' testimony when viewed in light of all the other evidence in the case. All of these are items to be taken into your consideration in determining the weight, if any, you'll assign to that witness' testimony.

*If there are any conflicts in the evidence, it is your duty to reconcile the conflicts if you can on the theory that each witness has testified to the truth. If you cannot so reconcile the testimony, then it is within your province to determine whom you will believe and whom you will disbelieve.*

Reasonable doubt is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

{¶25}  Tr. I, 126-28, (challenged instruction in italics.)

{¶26}  In closing instructions, the court charged the jury:

As I stated to you in my preliminary instructions, you are the sole judges of the facts, of the credibility of the witnesses, and the weight of the evidence. To weigh the evidence, you should consider the credibility of all the witnesses, and to do this you'll apply the tests of truthfulness which you probably apply in your daily lives. These tests may include: the appearance of each witness on the witness stand; their manner of testifying; the reasonableness of their testimony; the opportunity that the witness had to see, hear and know the things concerning which they testified; the accuracy of memory; frankness or lack of it; along with the intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony. Applying these tests, you would assign to the testimony of each witness such weight as you deem proper.

You are not required to believe the testimony of any witness simply because the witness has been placed under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is within your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

{¶27}  Tr. III, 551-52.

{¶28}  The jury was correctly and completely charged on their responsibility to determine the credibility of witnesses.  Although the challenged instruction may have constituted a permissive inference about the truthfulness of witnesses, the final instructions to the jury given immediately prior to their deliberations made it clear to the

jury that they were not required to believe the testimony of any witness just because they were under oath.

{¶29} The first assignment of error is overruled.

II.

{¶30} In his second assignment of error, appellant argues that counsel was ineffective for failing to object to the jury instruction he challenges as plain error in his first assignment of error.

{¶31} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley* , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

{¶32} As discussed in our resolution of assignment of error one, there was no error in the jury instruction. Therefore, counsel was not ineffective for failing to object.

{¶33} The second assignment of error is overruled.

{¶34} The judgment of the Licking County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. and

Wise, J. concur.