Ricky PAYNE Plaintiff,

v.

**David R. McKUNE, et al. Defendants.**

No. 02–3434–JWL.

United States District Court,
D. Kansas.

Sept. 8, 2003.

Ricky Payne, Lansing, KS, Pro Se.

John K. Bork, Office of Attorney General, Topeka, KS, Autumn L. Fox, The Law Office of Autumn L. Fox, P.A., Abilene, KS, Elizabeth L. Reimer, Kansas Judicial Council, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Ricky Payne brings this motion for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner raises five separate grounds for relief in support of his motion: (1) that he received constitutionally ineffective assistance from his trial attorney because he failed to secure the testimony of alibi witnesses at trial; (2) that the state trial court violated his constitutional rights by failing to suppress statements made to law enforcement officials; (3) that the state court's instruction on aggravated robbery was constitutionally deficient; (4) that the state court violated his right to a fair trial by admitting DNA evidence without proper foundational requirements; and (5) that the state court upheld his convictions based on insufficient evidence. As set forth below, the court finds that the state courts' adjudications were neither contrary to nor an unreasonable application of controlling Supreme Court authority and denies petitioner's request for a writ of habeas corpus.

## BACKGROUND

On January 30, 1997, M.W. fell asleep on her couch around 11:30 p.m.[1] At approximately 2:00 a.m. the following morning, she awoke to find that her head was covered with a blanket and an intruder was beating her. As she stood up and struggled with the intruder, the blanket fell off of her head. M.W. testified that she immediately recognized the intruder as Mr. Payne, who was an acquaintance of her brother's. The intruder held M.W. down and proceeded to rape and sodomize her. Thereafter, he moved her into a bathroom, shut the door, and threatened to kill her if she came out of the room. The intruder

---

**1.** The Kansas Court of Appeals set forth a thorough description of the facts surrounding this incident in Mr. Payne's direct appeal, *State v. Payne*, 983 P.2d 290, 1999 WL 642937 (Kan.App.1999), and his appeal of the trial court's denial of his state habeas petition, *Payne v. State*, 48 P.3d 695, 2002 WL 1421190 (Kan.App.2002). To the extent that Mr. Payne has not rebutted these facts by clear and convincing evidence, the court has relied on the state court's factual determinations throughout this section. 28 U.S.C. § 2254(e)(1) (explaining that a state court's determination of a factual issue is presumed to be correct and petitioner has burden of rebutting this presumption by clear and convincing evidence).

exited, and M.W. called the police to report the incident. M.W. went to the hospital where medical personnel observed that she had bruises, swollen eyes, and fresh abrasions and tears in her anus.

Besides M.W.'s eyewitness identification of Mr. Payne, other circumstantial evidence linked him to the crime. For example, investigators discovered shoe prints outside of M.W.'s apartment that matched a pair of shoes owned by Mr. Payne. Investigators also tested a semen stain found on M.W.'s underwear, which matched Mr. Payne's DNA.[2] Also, Mr. Payne gave a statement to the police. According to the interviewing officers, he initially denied being at M.W.'s residence. However, after showing him pictures of the victim and the injuries that she sustained, he stated that the bruises were the result of "rough sex," to which she consented. Mr. Payne denied these statements at trial and further testified that he was not at M.W.'s apartment at the time of the incident. Even so, a jury convicted petitioner of rape, aggravated criminal sodomy, aggravated burglary, and kidnapping. The trial court sentenced him to a controlling term of 486 months of imprisonment.

On direct appeal to the Kansas Court of Appeals, Mr. Payne raised five issues: (1) whether the trial court erred in denying his motion to suppress his statements to police; (2) whether the trial court erred in its jury instruction on the aggravated robbery charge; (3) whether the trial court erred by admitting the DNA results into evidence; (4) whether the trial court erred by denying his motion for a new trial; and (5) whether there was insufficient evidence to support his convictions. On August 20, 1999, the Kansas Court of Appeals affirmed his convictions. The Kansas Supreme Court denied his petition for review.

On December 29, 1999, petitioner filed a state petition for habeas relief pursuant to K.S.A. § 60–1507. Therein, Mr. Payne alleged that his trial counsel's performance was constitutionally deficient because he failed to properly subpoena alibi witnesses. The district court appointed counsel and heard testimony on two separate occasions. At the conclusion of the first hearing, the trial court found that trial counsel's performance did not deviate from an objectively reasonable standard of care and denied Mr. Payne's motion. Several months later, Mr. Payne filed a notice of appeal out of time. The Court of Appeals appointed new counsel, who requested leave to file the notice of appeal out of time or for an additional hearing on the state habeas motion. Mr. Payne was granted a second hearing on his state habeas motion. At the end of the second hearing, the court again found that trial counsel's performance was not unreasonable and, additionally, found that any deficient performance did not result in prejudice to petitioner's defense. On June 28, 2002, the Kansas Court of Appeals affirmed the trial court's denial of Mr. Payne's state habeas petition. The Kansas Supreme Court denied his petition for review on September 24, 2002.

Mr. Payne filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 19, 2002.

**STANDARD**

Because Mr. Payne "filed his habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this [proceeding]." *Martinez v. Zavaras,* 330 F.3d 1259, 1262 (10th Cir.2003) (citing *Lindh v.*

---

**2.** Based on the DNA profile that was developed, the prosecution's expert witnesses testified that there was a one in two billion chance that it matched the DNA of an individual other than Mr. Payne.

*Murphy,* 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). The AEDPA " 'circumscribes a federal habeas court's review of a state-court decision.' " *Anderson v. Mullin,* 327 F.3d 1148, 1152 (10th Cir.2003) (quoting *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003)).

Specifically, where the Kansas Court of Appeals reviews the merits of Mr. Payne's claims, "habeas relief is not warranted unless the state adjudication '(1)...was *contrary to,* or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)...was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Martinez,* 330 F.3d at 1262 (quoting § 2254(d)) (emphasis added).[3] "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, the Court in *Williams* stressed that the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable.' " *Anderson,* 327 F.3d at 1153 (citing *Williams,* 529 U.S. at 409, 120 S.Ct. 1495, 146 L.Ed.2d 389).

The court presumes "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence." *Martinez,* 330 F.3d at 1262 (citing § 2254(e)(1); *Fields v. Gibson,* 277 F.3d 1203, 1221 (10th

Cir.2002)). "This presumption does not extend to legal determinations or to mixed questions of law and fact." *Id.* (citing *Herrera v. Lemaster,* 225 F.3d 1176, 1178–79 (10th Cir.2000)). "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.' " *Id.* (quoting *Cargle v. Mullin,* 317 F.3d 1196, 1202 (10th Cir. 2003)). "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings." *Anderson,* 327 F.3d at 1152.

## ANALYSIS

Mr. Payne raises five arguments in support of his petition for relief: (1) that trial counsel's failure to have the Sheriff's department subpoena his alibi witnesses constitutes ineffective assistance in violation of his rights under the Sixth Amendment; (2) that the state court violated his due process rights by admitting involuntary statements made to law enforcement officials; (3) that the state court's instruction on aggravated robbery was constitutionally deficient; (4) that the state court violated his right to a fair trial by admitting DNA evidence; and (5) that the state court upheld his convictions based on insufficient evidence. The court will address each issue in turn.

## I. Ineffective Assistance of Counsel

■ Mr. Payne believes that his trial counsel was ineffective in failing to secure the testimony of alibi witnesses. Trial counsel testified that he gave the subpoenas to his petitioner's friend, Carol Casey, to serve on the witnesses, instead of having the sheriff's department serve them. The Kansas Court of Appeals found that

---

**3.** As discussed within this opinion, where the Kansas Court of Appeals did not "adjudicate" his claims on the merits, the pre-AEDPA standard applies.

trial counsel's performance did not deviate from the level of care guaranteed by the Sixth Amendment, and that even if counsel's performance was deficient, there was not a reasonable probability that the outcome of the proceeding would have changed, but for trial counsel's performance.

In reaching this decision the state appellate court relied on the Sixth Amendment framework set forth in *State v. Rice*, 261 Kan. 567, 599, 932 P.2d 981 (1997). The *Rice* court, in turn, borrowed its legal framework from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.* at 597–99, 932 P.2d 981. Thus, while the Kansas Court of Appeals did not directly cite to *Strickland*, it applied the same legal framework established under controlling Supreme Court precedent. As such, the state court adjudicated petitioner's claim on the merits, within the meaning of 28 U.S.C. § 2254, and petitioner is entitled to relief only if the appellate court's application of the legal framework was objectively unreasonable. *Cook v. McKune*, 323 F.3d 825, 830–831 (10th Cir.2003) (noting that state court's failure to cite or expressly rely on federal law does not preclude use of the AEDPA standard).[4]

The court finds that the state court's application of the *Strickland* framework was objectively reasonable. First, the state court's finding that counsel's performance did not deviate from a reasonable standard of care was objectively rea-

sonable. The Kansas Court of Appeals reached this finding, in large part, based on the testimony of Mr. Payne's trial counsel, Harry Warren. At the state court evidentiary hearing, Mr. Warren testified that he spoke with the alibi witnesses on at least two occasions prior to trial: once approximately six months before trial and again approximately one week before trial. During these meetings, Mr. Warren advised all the witnesses of the date and time of the trial, and all of the witnesses agreed to appear voluntarily. Nevertheless, Mr. Warren prepared subpoenas for these witnesses the day before trial. Rather than having personnel from the sheriff's department serve the subpoenas, he asked Mr. Payne's friend (Carol Casey) to deliver them. Mr. Warren explained that he decided to give the subpoenas to Ms. Casey (instead of the sheriff's department) because the alibi witnesses were frequently at Ms. Casey's home and Mr. Warren did not believe that the witnesses would answer the door for a sheriff's deputy because they all had some legal problems and feared arrest. The record contains no evidence that Mr. Warren had any reason to believe that Ms. Casey would not make a good faith effort to deliver the subpoenas. According to Mr. Warren, Ms. Casey was Mr. Payne's most ardent supporter. Mr. Payne does not dispute these factual findings.

In light of these facts and petitioner's failure to cite any authority to the contrary, the court believes that the state

---

4. The State contends that petitioner failed to exhaust his claims raised on direct appeal. It takes the position that such claims are not exhausted unless raised and exhausted in state habeas proceedings. This position is incorrect. To satisfy the exhaustion requirement, Mr Payne need only show that he presented as federal constitutional issues "to the highest state court, either by direct review of the conviction or in a postconviction attack," those issues that he raises in his federal habe-

as petition. *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994); *see also Butler v. State of Kansas*, 57 Fed.Appx. 781, 782–83, 2002 WL 31888316 (10th Cir. 2002) (explaining that to satisfy the exhaustion requirement under 28 U.S.C. § 2254(b)(1)(A) petitioners must present the issues raised in the federal petition to the highest Kansas court, either by direct appeal or by the state post-conviction process).

appellate court's finding that Mr. Warren reasonably believed "that the witnesses would be more readily served by someone they knew and who was not associated with law enforcement" was objectively reasonable. After all, trial counsel had assurances from the alibi witnesses that they would appear voluntarily. Even so, he obtained subpoenas to secure their appearance. These facts distinguish this case from other situations where a failure to secure the attendance of an alibi witness constituted ineffective assistance of counsel. For example, in *Holmes v. McKune,* 59 Fed.Appx. 239, 2003 WL 220496 (10th Cir.2003), the court found that trial counsel's "complete failure to interview and call any alibi witnesses constituted ineffective assistance of counsel." *Id.* at 249–50, 2003 WL 220496, at *10. Unlike the petitioner's trial counsel in *Holmes,* Mr. Warren did investigate the alibi defense and met with the relevant witnesses on at least two occasions before trial. Moreover, he took affirmative steps to ensure their attendance at trial.[5]

Even so, the question remains whether Mr. Warren's efforts to secure their attendance deviated from a reasonable standard of professional care. For example, in *Washington v. Smith,* 219 F.3d 620, (7th Cir.2000), the court found that a trial attorney's failure to subpoena a hard-to-find witness until the eleventh hour constituted ineffective assistance, and that the state appellate court's finding to the contrary was an unreasonable application of *Strickland.* *Id.* at 631–32. The trial attorney in *Washington* never contacted the alibi witness and his efforts to secure attendance were simply too little too late. Here, however, Mr. Warren informed the alibi wit-

nesses on two separate occasions of the time and location of the trial, and the witnesses agreed to appear voluntarily. *United States v. Simpson,* 32 Fed.Appx. 507, 509–10, 2002 WL 120534, at *3 (10th Cir.2002) (rejecting ineffective assistance claim based on trial counsel's failure to subpoena defense witnesses because "[t]here is no need to subpoena defense witnesses who are willing to appear at trial without a subpoena...."). Mr. Payne even acknowledged in his brief on direct appeal that "[c]learly the Defense had made efforts to locate witnesses, but that these witnesses were not being cooperative." Moreover, his decision to have Ms. Casey, instead of sheriff's deputies, deliver the subpoenas was both practical and logical. Ms. Casey frequently encountered these witnesses at her residence and there was reason to believe that they would avoid service from law enforcement officials. In light of these particular facts, which the petitioner has not disputed in his petition, the court finds that the state appellate court's application of the performance prong of *Strickland* was not objectively unreasonable, and, therefore, petitioner is entitled to no relief on this claim.

Second, the state court's finding that trial counsel's performance did not result in prejudice or otherwise deprive Mr. Payne of a fair trial was reasonable. In reaching its finding, the state appellate court properly examined what effect the alibi witness testimony would have had on the jury, in light of the totality of the evidence presented at trial. *See Holmes,* 59 Fed.Appx. at 253, 2003 WL 220496, at *3 (citing *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052) (explaining that "[i]n making a

---

**5.** Petitioner also relies on *Brown v. Myers,* 137 F.3d 1154 (9th Cir.1998) and *Bryant v. Scott,* 28 F.3d 1411 (5th Cir.1994) in support of his ineffective assistance claim. As in *Holmes,* trial counsel in these cases completely failed to investigate, locate, interview or produce

the alibi witnesses. Here, Mr. Warren investigated, located and took affirmative steps to produce Mr. Payne's alibi witnesses, thereby distinguishing this case from *Brown* and *Bryant.*

prejudice determination, the strength or weakness of the State's case is relevant." And, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). The state appellate court first recognized that the prosecution presented an abundance of inculpatory evidence against Mr. Payne. For example, the victim firmly and definitively identified Mr. Payne as the perpetrator. In addition to this eyewitness testimony, there was significant circumstantial evidence linking petitioner to the crime. Investigators discovered that petitioner's DNA matched semen stains located on the victim's underwear, which she wore on the night of the attack. Investigators also found a shoe print outside the victim's apartment that matched a pair of shoes owned by Mr. Payne. Finally, officers that interrogated Mr. Payne testified that petitioner admitted to engaging in consensual sex with the victim on the night in question. Given the strength of this evidence, the Kansas Court of Appeals found that "it is difficult to believe that the testimony of three or four transient people, some of whom had criminal records, to the effect that Payne was drinking and smoking marijuana with them at the time of the crime would be sufficient to raise a reasonable doubt in the minds of the jurors."

Petitioner has failed to proffer clear and convincing evidence to contradict these factual findings.[6] As such, the court cannot find that the state appellate court unreasonably applied the prejudice prong of the *Strickland* framework to the facts of this case. *See United States v. Nelson*, 984 F.Supp. 1368, 1372 (D.Kan.1997)

(holding that even if attorney had secured defense witnesses, § 2255 relief was not warranted where the evidence against defendant at trial was so overwhelming that no reasonable probability exists that the result of the proceeding would have been different). While the alibi witnesses might have corroborated Mr. Payne's testimony that he was not at the scene, the state court reasonably found that this evidence (which would have been derived from individuals with criminal records who would have admitted to drinking and smoking marijuana on the night in question) would not have undermined the totality of inculpatory evidence against Mr. Payne. Thus, even if a reasonable jurist could disagree with the state court's ultimate conclusion (which this court does not), petitioner would be entitled to no relief. *Upchurch v. Bruce*, 333 F.3d 1158, 1163 (10th Cir.2003) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

## II. Suppression of Petitioner's Statements to the Police

■ Mr. Payne contends that the state court violated his constitutional rights by failing to suppress statements he made to the police. The voluntariness of a statement or confession made to law enforcement depends upon whether it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Moran v. Burbine*, 475 U.S. 412,

---

**6.** Petitioner does not offer specific facts to challenge the factual findings of the state court, but he does contest the use of the DNA evidence and the statements he made to law enforcement officers on independent grounds. As discussed herein, the court concludes that

the admission of this evidence at trial does not constitute a violation of Mr. Payne's constitutional rights. Thus, the court may properly consider this evidence in the context of petitioner's Sixth Amendment claim.

421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). In deciding whether a statement or confession is involuntary, the court must examine the totality of the circumstances. *Id.* at 421, 106 S.Ct. 1135. Here, the Kansas Court of Appeals applied the "totality of the circumstances" test in examining Mr. Payne's admissions to law enforcement. As such, petitioner is entitled to relief only if the state court's application of the legal framework was objectively unreasonable.

Mr. Payne identifies numerous factors in support of his claim that the totality of the circumstances demonstrates that his statement was involuntary, including: (1) that law enforcement officials failed to provide *Miranda* warnings before the interrogation; (2) the interview lasted seven hours, with only one break; (3) law enforcement officials denied his request for counsel and his request to stop the interview; and (4) that law enforcement officials employed coercive interviewing techniques.

The court is mindful that the relevant constitutional inquiry is whether the totality of the circumstances demonstrate that petitioner's statements were voluntary. Nevertheless, for analytical purposes, it is helpful to address each of Mr. Payne's supporting factors. First, as to his claim that he did not receive *Miranda* warnings, petitioner did not raise this particular allegation on direct appeal or on state collateral review. In fact, in his brief on appeal, Mr. Payne's counsel explained that "[i]n this case, the Defendant complains that *although he was read his rights,* (and it should be noted that no written rights waiver form was used), that the rights were treated as non existent during the interview." (Emphasis added). Moreover, investigators testified that they read Mr. Payne his *Miranda* warnings at the beginning of the interview. Thus, the record fails to support Mr. Payne's first factor offered in support of involuntariness.

Second, as to the length of the interview, the Kansas Court of Appeals found that the seven-hour interview was not coercive because it was interrupted by breaks and a hospital examination.[7] Moreover, the Kansas Court of Appeals found that Mr. Payne was permitted to eat, drink and smoke at various times during this period. The court believes that the Kansas Court of Appeals reasonably found that the length of the interview did not render petitioner's statements involuntary. *See, e.g., Clark v. Murphy,* 331 F.3d 1062, 1073 (9th Cir.2003)(finding petitioner's detention in interview room for eight hours did not render statements involuntary); *Jenner v. Smith,* 982 F.2d 329, 334 (8th Cir.1993) (six or seven hour questioning not coercive); *Martin v. Wainwright,* 770 F.2d 918, 927 (11th Cir.1985), modified by 781 F.2d 185 (1986) (five hour intermittent questioning did not render confession involuntary); *United States v. Lehman,* 468 F.2d 93, 101 (7th Cir.1972) ("vigorous" eight hour questioning interrupted by several breaks did not make confession involuntary).

Third, as to petitioner's alleged request for counsel, the record does not provide a sufficient factual basis for this claim. No party disputes the fact that once a defendant has invoked his right to counsel, law enforcement officials cannot interrogate him outside the presence of his attorney, absent a waiver of the right. *United States v. Roman–Zarate,* 115 F.3d 778, 782 (10th Cir.1997) (citing *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 16

---

7. Petitioner alleges that he was not given any break, outside of the trip to the hospital to undergo medical testing. However, the Kansas Court of Appeals found that the seven hour time period "included breaks and the hospital examination." The state court's finding is presumed correct, and Mr. Payne fails to proffer clear and convincing evidence to contradict this finding. 28 U.S.C. § 2254(e).

L.Ed.2d 694 (1966)). The question is whether, as a matter of fact, Mr. Payne informed the officers that he wanted the assistance of counsel or wanted the interview to cease.

At the suppression hearing, petitioner testified that he invoked his right to counsel at some point during the interrogation process. However, Detective Michael Brown testified that he never recalled Mr. Payne invoking his right to counsel. Detective Mike McAtee testified that Mr. Payne did not invoke his right to counsel at anytime during the interview. Similarly, Detective Brown testified that he did not recall Mr. Payne ever invoking his right to remain silent, and Detective McAtee testified that Mr. Payne never requested that officers cease the interview. On direct appeal, the Kansas Court of Appeals found that while petitioner's testimony was "believable," it was contradicted in the record, and "[o]n appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are to be resolved in favor of the State." The issue here is not whether the defendant's statements were sufficient (as a matter of law) to constitute an invocation of his right to counsel, but instead, whether (as a question of fact) petitioner actually requested the assistance of counsel. Ultimately, the state court adopted the version of the facts proffered by the detectives, over those proffered by Mr. Payne, and the state appellate court deferred to the state trial court's credibility determination. "This Court cannot impose its own independent judgment on an issue of credibility to overrule the decision of a court that had the opportunity to view Petitioner's testimony first-hand." *Bryan v. Gibson*, 276 F.3d 1163, 1171 (10th Cir.2001) (resolving factual issues depends on the factfinder's evaluation of the credibility and demeanor of witnesses). As such, the court is in no position to address whether the state trial court made a proper credibility determination between the testimony of Mr. Payne and the testimony of the interrogating officers. Likewise, the court is in no position to find error in the state appellate court's refusal to re-examine questions of credibility, especially where (as here) petitioner has failed to proffer clear and convincing evidence that the state court should have adopted his version of the facts. *See* 28 U.S.C. § 2254(e); *Rushen v. Spain*, 464 U.S. 114, 121 n. 6, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (explaining that the state courts' determinations about witness credibility and inferences to be drawn from the testimony were binding on the federal district court); *see also Lile v. McKune*, 45 F.Supp.2d 1157, 1161 (D.Kan. 1999) (explaining that petitioner bears the burden of establishing by convincing evidence that any challenged factual determination is erroneous, and that factual issues include the recital of events and the credibility of the narrators).

Finally, petitioner's claim that the interviewing techniques were coercive lack sufficient support in the record. As to his claim that the police officers threatened to add additional charges if he did not confess to the crime, Mr. Payne failed to raise this particular claim in his brief on direct appeal. Moreover, the record contradicts Mr. Payne's allegations. Detective Brown testified that he never threatened Mr. Payne with additional charges and did not recall Detective McAtee making any such threats. Similarly, Detective McAtee testified that he never threatened to charge Mr. Payne with additional counts of rape if he did not confess. Finally, Mr. Payne does not identify what additional charges law enforcement officers threatened to file or whether the officers made the alleged threats in bad faith; i.e., without probable cause to believe that petitioner had committed such offenses. *See Miles v. Dorsey*, 61 F.3d 1459, 1468–69 (10th Cir.1995)

(finding that threat to prosecute family members for covering up defendant's crime unless he pled no contest did not render agreement involuntary where prosecutors acted in good faith belief that family had committed such crimes).

The court must further examine Mr. Payne's allegations in light of the state court's findings that suggest his statements were voluntary. The Kansas Court of Appeals found that the interrogation was not uninterrupted. Instead, it concluded that officials gave petitioner breaks from the interrogation, including one extended break when Mr. Payne consented to medical tests at the local hospital. While undergoing testing at the hospital, investigators gave "him some freedom to communicate with others for almost 2 hours." *Payne*, 983 P.2d 290, 1999 WL 642937, at 3. Moreover, during the entire interview process, there is evidence of only one heated exchange between Mr. Payne and one of the police detectives. Finally, petitioner did not argue that his age, intellect, or background hindered his ability to give voluntary statements to law enforcement officials. In light of the facts contained in the record, the court finds no basis to conclude that the state court unreasonably applied the "totality of the circumstances" test in concluding that petitioner's statements were voluntary. As such, the court denies petitioner federal habeas corpus relief on this claim.

### III. State Trial Court's Instruction to the Jury on Aggravated Burglary

■ Mr. Payne contends that the trial court erred in its aggravated burglary instruction to the jury. Specifically, he believes that the instruction failed to specify the felony he intended to commit inside the residence. The Tenth Circuit has aptly described the onerous standard for reviewing Mr. Payne's claim of instructional error:

In a habeas proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden. *Lujan v. Tansy*, 2 F.3d 1031, 1035 (10th Cir.1993), cert. denied, 510 U.S. 1120, 114 S.Ct. 1074, 127 L.Ed.2d 392 (1994). A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial. *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir.), cert. denied, 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 402 (1990). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977) (footnote omitted). The question in this proceeding is not whether the instruction is "undesirable, erroneous, or even 'universally condemned,'" but whether the instruction so infected the trial that the resulting conviction violates due process. *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 94 S.Ct. at 404. The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial. *United States v. Frady*, 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982).

*Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.1995).

Here, Mr. Payne has failed to satisfy this burden. When reviewing the instructional error in the overall context of the trial, it is apparent that the aggravated

burglary instruction did not render the proceedings fundamentally unfair. The state trial court instructed the jury that to convict Mr. Payne of aggravated burglary it must find, among other elements, that the defendant entered the victim's residence "with the intent to commit theft, a felony or sexual battery, therein." Rather than specifying the possible underlying crime, the instruction simply tracked the general statutory language. The Kansas Court of Appeals recognized that the district court erred in failing to set forth the statutory elements of the intended felony (underlying the aggravated burglary charge). However, relying on *State v. Richmond*, 258 Kan. 449, 904 P.2d 974 (1995), the state appellate court concluded that the error was harmless. In *Richmond*, the state charged the defendant with aggravated burglary, aggravated robbery, rape, and aggravated kidnapping. In *Richmond*, as here, the trial court failed "to set out the statutory elements of the intended felony." *Id.* at 459, 904 P.2d 974. Mr. Richmond's defense was that he was not the individual who committed the crimes in question. *Id.* However, the jury found that Mr. Richmond was the perpetrator. Thus, the Kansas Supreme Court reasoned that "[i]f the jury believed that the man who was in [the victim's] house who beat her, raped her, and stole money and goods from her house was Richmond, there seems to have been little, if any, chance that the jurors would have considered crimes other than aggravated robbery and rape, for which the elements had been supplied, as the reason for entering the house." *Id.*

Mr. Payne's situation is factually indistinguishable from *Richmond*. That is, Mr. Payne argued that he was not the individual who entered M.W.'s residence and beat, raped, sodomized, and kidnapped her. The jury, however, was convinced beyond a reasonable doubt that Mr. Payne was in fact the perpetrator. Thus, as in *Rich-*

*mond*, once the jury was convinced that Mr. Payne was the perpetrator, there is little chance that it considered crimes, other than those charged (for which instructions were provided), to support the specific intent element of aggravated burglary. The court finds that the reasoning in *Richmond* is logical and persuasive. Moreover, it demonstrates why the instructional error did not so infect the trial that Mr. Payne's resulting conviction violates due process. In other words, when examining the instructional error in the overall context of the proceedings, the court is convinced that the jury would have convicted Mr. Payne of aggravated burglary, even if the trial court had instructed the jury on the underlying offenses supporting the intent element of the aggravated burglary count. As such, petitioner is entitled to no relief as to this claim.

## IV. DNA Evidence

■ Mr. Payne claims he is entitled to federal habeas relief based on the state court's admission of DNA evidence. First, Mr. Payne contends that the state trial court erred in admitting the DNA evidence based on a "basic explanation" of the testing process, which failed to provide a sufficient foundation for admitting the evidence. The Kansas Court of Appeals reviewed the record and was "convinced" that the KBI scientist sufficiently explained and set forth a sufficient foundation to admit the test results. The court finds that the state court's ruling does not infringe upon petitioner's constitutional rights. "As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal habeas courts may not interfere with state evidentiary rulings unless the rulings in question rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Moore v. Marr*, 254 F.3d 1235,

1246 (10th Cir.2001) (internal citation and quotation marks omitted). Mr. Payne fails to explain how the state court's evidentiary ruling concerning whether a proper foundation had been laid to admit the evidence resulted in a fundamentally unfair trial. Moreover, during direct examination and, in particular, during cross-examination, the expert witness thoroughly elaborated upon and explained the process for DNA extraction and testing. Thus, to the extent that the trial judge incorrectly found that the prosecution had laid a proper foundation for admitting the evidence under Kansas law, the alleged error was cured by the subsequent testimony of the KBI forensic scientist.

Mr. Payne further contends that the statistical analysis interpreting the DNA testing was admitted without sufficient scientific reliability. Here, the Kansas Bureau of Investigation employed the RFLP method of DNA testing. The Kansas Supreme Court has explained that "the statistical analysis portion of both RFLP and PCR testing meets the *Frye* test...[and] the challenge to DNA statistical analysis goes to the weight of the evidence and not to the admissibility." *State v. Isley*, 262 Kan. 281, 290, 936 P.2d 275 (1997). Thus, petitioner has failed to establish a federal habeas claim based on the admissibility of this evidence under state law.[8] *See Stills v. Dorsey*, 7 Fed.Appx. 856, 859, 2001 WL 303351, at *1 (10th Cir.2001)(finding that

New Mexico state court determination that PCR method of DNA testing satisfied the standard for expert evidence set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) was not contrary to federal law); *Spencer v. Murray*, 18 F.3d 237, 239–40 (4th Cir.1994) (finding that admissibility of DNA evidence under state law is not a question the federal court considers on the merits in habeas review). Moreover, Mr. Payne's trial counsel raised several challenges to the accuracy of the DNA results on cross-examination, which further establishes that the admission of this evidence did not render his trial fundamentally unfair. As such, Mr. Payne is entitled to no relief as to this claim.

## V. Sufficiency of the Evidence

Finally, petitioner alleges that there was insufficient evidence to support his convictions. In support of this claim, he explains that he testified that he did not commit the crimes in question, that his admissions to law enforcement were unreliable, and that the DNA evidence lacked foundation and was possibly contaminated.[9]

 The Kansas Court of Appeals rejected this claim under the controlling Supreme Court precedent set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), i.e., "whether, after viewing the evidence in the light

---

**8.** Mr. Payne alleges that he has been denied the right to independently test the DNA evidence and apparently contends that this constitutes a *Brady* violation. However, Mr. Payne failed to raise this claim on direct appeal, and he has neither alleged cause to excuse this procedural default nor prejudice flowing from the default. *Cannon v. Gibson*, 259 F.3d 1253, 1265 (10th Cir.2001) (noting that except for a few narrow exceptions, § 2254 habeas petitioners must exhaust available state court remedies before seeking habeas relief). Moreover, he fails to allege that the prosecution withheld any exculpatory in-

formation. To the extent that Mr. Payne is requesting discovery under Rule 6(a) of the Rules Governing Section 2254 Cases, the court finds that his conclusory allegations in support of such a request fail to establish good cause for such discovery. *LaFevers v. Gibson*, 182 F.3d 705, 722–23 (10th Cir.1999).

**9.** On direct appeal to the Kansas Court of Appeals, he also challenged the validity of the eyewitness identification, but he does not appear to raise this particular argument in support of his insufficiency claim in his petition for federal habeas relief.

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The state appellate court explained that petitioner's allegations concerning his statements to the police were without merit. It further explained that the jury was able to hear and weigh evidence concerning the reliability of the DNA evidence, and that such reliability and credibility determinations are within the strict province of the jury. Finally, the appellate court noted that there was overwhelming evidence against Mr. Payne, including: (1) the fact that M.W., who was familiar with petitioner's appearance and voice, identified Mr. Payne as the perpetrator; (2) M.W. sustained physical injuries consistent with her testimony about the attack; and (3) Mr. Payne's shoe prints were found outside M.W.'s residence. This evidence was independent from petitioner's admissions to law enforcement officials and the inculpatory DNA evidence. Viewed in the light most favorable to the prosecution, a rational trier of fact could have found Mr. Payne guilty of all counts of conviction. As such, the Kansas Court of Appeals reasonably applied controlling Supreme Court precedent and Mr. Payne is entitled to no relief as to this claim.

## CONCLUSION

The record, briefs and pleadings clearly establish that Mr. Payne is entitled to no federal habeas corpus relief. In particular, as to his ineffective assistance claim, trial counsel took reasonable steps to secure the attendance of alibi witnesses, and any deficient performance did not prejudice Mr. Payne's defense. Second, the Kansas Court of Appeals' application of the "totality of the circumstances" test to petitioner's statements to law enforcement officials was objectively reasonable. Third, the state trial court's aggravated robbery instruction to the jury did not

render petitioner's trial fundamentally unfair when viewed in the overall context of the proceedings. Fourth, the state court's evidentiary rulings as to the DNA evidence do not rise to constitutional dimensions. Finally, the state court's finding that there was sufficient evidence to convict Mr. Payne was a reasonable application of federal law.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Payne's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is denied.