Lillian **GEORGE**, Petitioner,

v.

Elaine **LORD**, Superintendent, Bedford Hills Correctional Facility Respondent.

No. 03 CV 01228(SJ).

United States District Court, E.D. New York.

Sept. 7, 2004.

Illian George, Bedford Hills, for Petitioner, Pro Se.

Charles J. Hynes, Esq., Kings County District Attorney by Victor Barall, Esq.,

Assistant District Attorney, Brooklyn, NY, for Respondents.

## MEMORANDUM AND ORDER

JOHNSON, Senior District Judge.

Petitioner Lillian George (hereinafter "Petitioner"), acting *pro se*, brings the above-captioned Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the motion is denied.

## BACKGROUND

Petitioner was arrested and charged in connection with the stabbing of Latoya Green (hereinafter "Green") that occurred in the early morning hours of January 1, 2000. She went to trial before a jury in Kings County on September 18, 2000 on an indictment charging one count of Attempted Murder in the Second Degree, one count of Assault in the First Degree, two counts of Assault in the Second Degree, one count of Assault in the Third Degree, and two counts of Criminal Possession of a Weapon in the Fourth Degree.

In a pre-trial *Sandoval* ruling, the trial court precluded any reference to Petitioner's prior conviction, but permitted the prosecutor to introduce testimony regarding the details of her arrest in this case, which included her apprehension at the office of her parole officer. (Trial Transcript (hereinafter "Tr.") at 6.) During the course of the trial, the judge gave the jury a limiting instruction that consisted of an acknowledgment that defendant was on probation for a prior offense, and directions that the jury was to consider her probation only as context in understanding the circumstances of her arrest and not in coming to a judgment on the instant charges. (Tr. at 177.)

The evidence at trial consisted of conflicting testimony from witnesses for the State and for the Defense regarding a fight or series of fights that took place outside of a juice bar and a game room on New Year's Eve, January 1, 2000, involving Petitioner and several other women. Complainant Green testified that after the fight, she was stabbed by Petitioner in the stairway of her building. (Tr. at 122.) No other witnesses testified about the stabbing. Shortly after the incident, Green called 911 and told the operator that the person who stabbed her was still outside the building. (Tr. at 124.) She shouted to police officers in the street below that "she stabbed me," but testified that she could not yell loudly and that the officers did not hear her. (*Id.*) The 911 tape, which recorded both the conversation with the emergency operator and Green's attempts to alert the officers, was played at trial, over Petitioner's objection. (Tr. at 127–28, 164–65.) Green sustained serious injuries to her colon and kidney (Tr. at 171), which caused significant loss of blood (Tr. at 172) and required emergency surgery and blood transfusions (Tr. at 131, 172). As a result of these injuries, she spent 11 days in the hospital (Tr. at 173) and required follow-up home nursing care (Tr. at 131, 175).

During cross-examination, Defense Counsel questioned Green about her prior statements made to police officers on January 1, 2000 (Tr. at 141) and to the Grand Jury (Tr. at 140), but not about another statement made on January 3, 2000. Later, during the testimony of Detective Teresa Leto, the Defense attempted to elicit testimony about Green's January 3 statement, but the testimony was precluded on the ground that Counsel had not laid a proper foundation by first questioning Green about that statement. ( Tr. at 181, 184.) Counsel then sought to recall Green in order to question her about her prior statement. (Tr. at 185.) The Court de-

nied that request, on the ground that re-calling the witness would be an "unneces-sary burden" and that it would give the statement "disproportionate importance" because "it's clear in these fights nobody remembers what's going on." (Tr. at 185–86.) The Defense called police officer Yecenia Portorreal, who testified to Green's January 1 statement, which dif-fered from her trial testimony. (Tr. at 329.)

Detective Leto testified that following the stabbing, she identified Petitioner as a suspect and sought to question her about the events. (Tr. at 176.) Petitioner testi-fied that she had been living in Baltimore prior to the incident, with the knowledge of her probation officer, and that she re-turned there on New Years Day, after the fights. (Tr. at 286–87.) She indicated that she learned that the police wanted to ques-tion her and spoke with a detective by telephone on two occasions, but that "[h]e made it seem like it was no big deal." (Tr. at 288–89.) She was apprehended by the police when she reported to her probation officer on February 10, 2000. (Tr. at 178–79, 290.) After the Defense rested, the prosecution called her probation officer to the stand as a rebuttal witness. The offi-cer testified that Petitioner had not in-formed him that she was living in Balti-more. (Tr. at 335.)

In summation, Defense Counsel ad-vanced the theory that Green was acciden-tally stabbed by Rashida Mathis, who had been fighting Petitioner and who, Petition-er had testified, was Green's roommate and lover. (Tr. at 275, 350.) Counsel brought out the close relationship between Green and Mathis, suggested a motive for them to cover for each other (Tr. at 343, 252), and emphasized Green and Mathis's prior inconsistent statements (Tr. at 356, 360).

At the conclusion of trial, the court, on its own motion, included the following jury instruction on flight:

... Now, flight alone raises no presump-tion of guilt. Flight is simply one of the things that you can consider ordinarily for, it is of slight value and sometimes it's of no value, depending upon the cir-cumstances. It is simply one of the factors that you may wish to consider in deciding this case. If you decide there was flight then you can decide, well, the defendant fled because she was, because she in her mind, that she had committed this crime or whether there was some other reasons why she fled. (Tr. at 391–92.)

The jury returned a verdict of guilty of Assault in the First Degree. (Tr. at 412.) Petitioner was acquitted of the attempted murder charge. (Tr. at 411.) On Decem-ber 20, 2000, the court sentenced her to ten years imprisonment, as a second vio-lent offender. (Sentencing Transcript at 5.)

Subsequently, Petitioner appealed her conviction to the New York State Appel-late Division, Second Department ("Appel-late Division") raising three issues: 1) that the court denied her a fair trial by admit-ting prejudicial evidence, over her objec-tion, that she was apprehended at the of-fice of her probation officer; 2) that she was denied the right to confront witnesses and to present a defense by the trial court's denial of her request to recall the complaining witness in order to confront her with a prior inconsistent statement; and 3) that the court's jury instruction on flight as consciousness of guilt was errone-ous and inadequate and thereby deprived her of a fair trial. On March 18, 2002, the Appellate Division affirmed Petitioner's conviction. *People v. George*, 292 A.D.2d 541, 739 N.Y.S.2d 586 (2d Dep't 2002). On May 23, 2002, the New York Court of

Appeals denied petitioner leave to appeal. *People v. George,* 98 N.Y.2d 651, 745 N.Y.S.2d 509, 772 N.E.2d 612 (N.Y.2002).

Petitioner filed a timely application for a writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, on March 7, 2003, raising the same three claims alleged in her direct appeal.

## DISCUSSION

### I. Procedural Requirements

This Petition is timely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), because it was filed within one year of "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2254(d)(1)(A).

■ Petitioner has exhausted her state court remedies by presenting these same claims "to every state court with jurisdiction to hear the claim." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994). *See* 28 U.S.C. § 2254(b)(1)(A) (requiring that the applicant have "exhausted the remedies available in the courts of the State."). The Appellate Division rejected Petitioner's claim regarding the admission of the location of her arrest on the merits. *George,* 292 A.D.2d 541, 739 N.Y.S.2d 586. Regarding the second and third claims, the court stated that the "remaining contentions are either unpreserved for appellate review or without merit." *Id.* (citations omitted). The Second Circuit has clarified the standard for determining when a state court has relied on an independent and adequate state ground that would bar federal habeas review. "[W]e explicitly hold that when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal

review. When it uses such language, the state court has not adequately indicated that its judgment rests on a state procedural bar, and its reliance on local law is not clear from the face of the court's opinion." *Fama v. Comm'r of Corr. Services,* 235 F.3d 804, 810–11 (2d Cir.2000) (quoting *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)) (additional citations omitted). Accordingly, this Court may also consider the merits of Petitioner's two claims that were not specifically addressed by the Appellate Division.

### II. Standard of Review

■ Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if the federal court concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Federal law where "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). A state court decision involves an "unreasonable determination of the facts" where the state court correctly identifies the governing legal principle from Supreme Court precedent, but unreason-

ably applies that principle to the facts of the petitioner's case. *Id.* at 413, 120 S.Ct. 1495. Thus, a federal court may only grant habeas relief where the state court's application of clearly established federal law was not only erroneous, but objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495. The federal court may not substitute its judgment for that of the state court. Federal claims which have not been adjudicated on the merits are reviewed under the *de novo* pre-AEDPA standard. *Washington v. Schriver,* 255 F.3d 45 (2d Cir.2001). This Court finds that under the applicable standards of review, none of Plaintiff's claims may serve as the basis for habeas relief.

### III. Admission of Evidence of Prior Convictions

Petitioner contends that the trial court improperly admitted prejudicial evidence of her prior criminal history by permitting testimony regarding her apprehension at the office of her probation officer. The Appellate Division denied this claim, on the ground that "[e]vidence of a defendant's prior bad acts is admissible if it is relevant to a material issue at trial and its probative value outweighs its potential for prejudice. In this case, the evidence was introduced as background material needed to complete the narrative." *George,* 292 A.D.2d 541, 739 N.Y.S.2d 586 (citations omitted).

■ Although this claim is thus ripe for federal habeas review, Petitioner fails to show the denial of a federal right upon which federal habeas corpus relief may be granted. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Federal habeas review of state court evidentiary rulings are limited to determining whether the alleged error rose to the level of a constitutional violation. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In order to reach the level of a constitutional violation, the error that occurred must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

■ In this case, the trial court permitted the testimony regarding Petitioner's probation solely for the purpose of giving the jury some context in understanding the circumstances of her apprehension. This Court agrees with the Appellate Division's finding that the trial court's ruling was correct under state law. *See People v. Alvino,* 71 N.Y.2d 233, 241, 525 N.Y.S.2d 7, 519 N.E.2d 808 (1987) ("If the evidence of prior crimes is probative of a legally relevant and material issue before the court, and for that reason not automatically barred under the general rule, admissibility turns on the discretionary balancing of the probative value and the need for the evidence against the potential for delay, surprise and prejudice."); *People v. Stanard,* 32 N.Y.2d 143, 146, 344 N.Y.S.2d 331, 297 N.E.2d 77 (1973) ("[S]ome background testimony is permissible in cases of this nature, [but] we emphasize that 'the introduction of such (background) evidence must be carefully monitored by the trial judge, as it is an accommodation that the general rules of evidence must at times make to the exigencies of the particular instance.'" (quoting *People v. Gleason,* 285 A.D. 278, 136 N.Y.S.2d 220, 224)).

This outcome is supported by federal law. "Under the 'inclusionary' approach followed in [the Second C]ircuit, 'evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a

defendant's criminal propensity,' as long as it is 'relevant to some disputed issue in the trial' and satisfies the probative-prejudice balancing test of Fed.R.Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (1986) (quoting *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir.1984) and *United States v. Figueroa*, 618 F.2d 934, 939 (2d Cir.1980)). Accordingly, there is no error of constitutional magnitude for the Court to consider on habeas review. The claim must be dismissed.

### IV. The Confrontation Clause Claim

Petitioner contends that the trial court's denial of her request to recall the complaining witness violated her right to confront witnesses and to present a defense. The Appellate Division denied this claim, without specifically invoking a state procedural rule, so this claim is ripe for federal habeas review.

The Confrontation Clause of the United States Constitution states in relevant part that "the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S. Const. amend. VI. This right of confrontation encompasses the right to cross-examine witnesses, *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), including questioning them about prior inconsistent statements, *California v. Green*, 399 U.S. 149, 158–59, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). However, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Thus, this right is still subject to balancing of other interests. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

Here, Petitioner was permitted extensive cross-examination of witness Green and did indeed confront her with her prior statement to police officers on January 1, 2000 and her testimony before the Grand Jury. Yet Defense Counsel neglected to question her about statements that she made to Detective Leto on January 3, 2000. Accordingly, the trial court precluded Counsel from asking Detective Leto about that statement, since no foundation had been laid by first giving Green an opportunity to respond on the stand. Counsel sought to recall Green to the stand on the next day of trial, but that request was denied by the court.

This Court finds that the trial judge was within his discretion in denying that request. The statement sought to be introduced apparently varied only slightly from Green's trial testimony, in its description of Green's actions immediately proceeding her return to her apartment and the confrontation on the stairwell. (Tr. at 184.) In addition, Defense Counsel had already impeached Green by introducing her other prior statements, which were more inconsistent with her trial testimony. Furthermore, the Defense had an opportunity to bring in this statement, an opportunity that was squandered during Green's appearance at trial. By precluding Counsel from recalling Green the next day, the trial judge sought to protect the witness, who was also the victim of the stabbing, from greater inconvenience.

Petitioner now argues that the January 3 statement was important to her

defense because it revealed the "evolution" and "purposeful alteration of Green's story over time." (Pet'r's Ex. A, Brief for Def't–App., 33.) She contends that this "key piece of evidence [was] necessary to establish the defense theory on how the stabbing occurred." (*Id.,* 34.) "The right to present a defense is one of the 'minimum essentials of a fair trial.'" *Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988) (quoting *Chambers,* 410 U.S. at 294, 93 S.Ct. 1038). However, this right is not unlimited. Indeed, the trial court may place restrictions on a defendant's right to present evidence, "if they serve 'legitimate interests in the criminal trial process,' and are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" *United States v. Almonte,* 956 F.2d 27, 30 (2d Cir.1992) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

This Court finds that the exclusion of this additional impeachment evidence did not hamper the Defense. In summation, Defense Counsel presented his theory regarding the possible accidental infliction of the stab wound during the fight, highlighted the opportunity for Green and Mathis to develop and coordinate their stories, and proposed a possible motive for Green to lie in placing the responsibility for the stabbing on Petitioner in order to protect Mathis from additional charges stemming from her fight with Petitioner and the other participants. Accordingly, the prior statement initially neglected by Defense Counsel was not necessary to Petitioner's defense, and the trial court's exclusion of additional questioning of Green did not prevent Petitioner from presenting her defense. This claim for habeas corpus relief is denied.

### V. Jury Instructions

Finally, Petitioner argues that the trial court erred in giving inadequate and in-complete jury instructions that permitted the jury to use the marginal evidence of flight as evidence of consciousness of guilt, in violation of her right to a fair trial. The Appellate Division denied this claim, without specifically invoking a state procedural rule, so this claim is also ripe for federal habeas review.

 Jury instructions are normally a matter of state law, so a federal court is limited in its review. *See Estelle,* 502 U.S. at 67, 112 S.Ct. 475. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985) (citing *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) ("Before a federal court may overturn a conviction resulting from a state trial, … it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.")).

 Under New York law, evidence of flight is admissible as a form of circumstantial evidence of consciousness of guilt. *People v. Yazum,* 13 N.Y.2d 302, 304, 246 N.Y.S.2d 626, 196 N.E.2d 263 (1963). However, courts have "insisted that the jury be closely instructed as to its weakness as an indication of guilt of the crime charged." *Id.* A jury instruction on flight may be given where "there was sufficient evidence of flight to warrant a charge on such evidence," *People v. Martinez,* 298 A.D.2d 897, 749 N.Y.S.2d 118, 121 (Dep't 4th Dep't 2002), and should include the limitation that such evidence is of slight value or may have an innocent explanation, *People v. Knight,* 174 A.D.2d 1008, 572 N.Y.S.2d 168, 169 (4th Dep't 1991).

■ This Court finds that the instruction was proper under New York law. At Petitioner's trial, there was conflicting evidence about whether Petitioner had sought to flee the jurisdiction following the New Year's Eve incident. Although Petitioner and other Defense witnesses testified that Petitioner had lived in Baltimore prior to the incident and simply returned there after the holidays (Tr. at 286, 254, 266), Petitioner's parole officer testified that she had not discussed this move with him and stated that such an authorized move would be a violation of the conditions of her parole (Tr. at 335). Moreover, the court's charge comported with state law, because the judge specifically admonished the jury that evidence of flight was of slight value in determining consciousness of guilt or "whether there was some other reasons why she fled." (Tr. at 392.) Accordingly, this Court need not determine whether any error also violated the federal constitution. Petitioner's claim is dismissed.

## CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is denied. The Clerk of the Court is directed to close this case. Because Petitioner has not made a substantial showing of the denial of any constitutional right, a certificate of appealability will not be issued. *See Miller–El v. Cockrell* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reiterating the standard for issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c)). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

SO ORDERED.