**Wilson VIVAR, Petitioner,**

v.

**Daniel A. SENKOWSKI, Superintendent, Clinton Correctional Facility Respondent.**

**No. 03 CV 1355(SJ).**

United States District Court, E.D. New York.

Sept. 9, 2004.

Wilson Vivar, Clinton Correctional Facility, Dannemora, for Pro se.

Charles J. Hynes, Kings County District Attorney, By Jodi Lynne Mandel, Assistant District Attorney, Brooklyn, NY, for Respondent.

## MEMORANDUM AND ORDER

JOHNSON, Senior District Judge.

Petitioner Wilson Vivar (hereinafter, "Petitioner"), appearing *pro se,* has petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (" § 2254"). For the reasons stated below, the petition for habeas corpus is GRANTED in part and DENIED in part.

## BACKGROUND

Petitioner was involved in a shooting on August 29, 1999, in which Russell Moore (hereinafter "Moore") was severely injured. Petitioner was charged by Kings County Indictment Number 7065/99 with several serious crimes, including Attempted Murder in the Second Degree, Assault in the First Degree, two counts of Assault in the Second Degree, and Criminal Possession of a Weapon in the Second Degree.

He went to trial before a jury on December 6, 2000. The evidence at trial included the accounts of the victim, several additional eyewitnesses, and police officers who responded to the scene and apprehended Petitioner after a brief foot chase. This evidence indicated that Moore and another individual, known to witnesses as Nicky, had been involved in an earlier altercation (Trial Transcript ("Tr.") at 37, 97, 123–24, 159–60, 224), that Moore later encountered Nicky and Petitioner (Tr. at 46, 131, 166, 232, 283), that Nicky pointed Moore out to Petitioner (Tr. at 131, 133, 260), and that Petitioner then drew a shotgun out of his waist area and pointed it at Moore (Tr. at 48, 132, 232, 274, 285). Moore and Petitioner briefly struggled over the weapon, the shotgun discharged during that struggle, and Moore was struck in the stomach at close range. (Tr. at 49, 132, 170, 233, 286.) Several witnesses also testified that after Moore had been hit and had fallen to the ground, Petitioner "racked" the gun, by pumping the barrel to prepare to fire another shot. He then pointed it at Moore's head, and pulled the trigger, but no second shot was discharged. (Tr. at 134, 171–73, 236, 291.) At trial, Petitioner argued misidentification and advanced the theory that Nicky was the one holding the shotgun when it fired. (Tr. at 20, 617, 622.)

At the conclusion of trial, the jury found Petitioner guilty of one count of Criminal Possession of a Weapon in the Second Degree and one count of Assault in the Second Degree. (Tr. at 746.) He was acquitted of the more serious charges. (Tr. at 745–46.) Petitioner was sentenced on January 10, 2001 to fifteen years imprisonment on the weapons charge and five years on the assault count. (January 10, 2001 Sentencing Transcript at 9.)[1]

Thereafter, Petitioner appealed his conviction to the Appellate Division of the New York State Supreme Court, Second Department (hereinafter "Appellate Division"), raising the same claims brought in the pending federal petition. The Appellate Division denied these claims on their merits, with only a general finding that the evidence was legally sufficient and not against the weight of the evidence. *People v. Vivar*, 295 A.D.2d 459, 743 N.Y.S.2d 312 (2d Dep't 2002). The New York Court of Appeals denied leave to appeal. *People v. Vivar*, 98 N.Y.2d 714, 749 N.Y.S.2d 12, 778 N.E.2d 563 (2002).

On March 17, 2003, Petitioner filed this Petition for a writ of habeas corpus, raising the same claims raised in his direct appeal: the evidence at trial was insufficient for conviction on either charge, in violation of the Fourteenth Amendment to the United States Constitution; and Petitioner's sentence on the weapons conviction constitutes cruel and unusual punishment in violation of the Eighth Amendment.

## DISCUSSION

### I. Procedural Requirements

This Petition is timely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), because it was filed within one year of "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2254(d)(1)(A).

Petitioner has exhausted his state court remedies by presenting these same claims "to every state court with jurisdiction to hear the claim." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994). *See* 28 U.S.C.

---

1. These sentences were originally set to run consecutive to each other. However, upon reconsideration, the trial court resentenced Petitioner on January 16, 2001 and made the sentences concurrent to each other. (January 16, 2001 Sentencing Transcript.)

§ 2254(b)(1)(A) (requiring that the applicant have "exhausted the remedies available in the courts of the State."). The state court considered these claims and rejected them on their merits. *Vivar*, 743 N.Y.S.2d 312.

## II. Standard of Review

■ Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if the federal court concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Federal law where "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). A state court decision involves an "unreasonable determination of the facts" where the state court correctly identifies the governing legal principle from Supreme Court precedent, but unreasonably applies that principle to the facts of the petitioner's case. *Id.* at 413, 120 S.Ct. 1495. Thus, a federal court may only grant habeas relief where the state court's application of clearly established federal law was not only erroneous, but objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495. The federal court may not substitute its judgment for that of the state court.

## III. Criminal Possession of a Weapon in the Second Degree

### A. Insufficiency of the Evidence

■ Petitioner argues that his conviction for Criminal Possession of a Weapon in the Second Degree violated due process of law as guaranteed by the Fourteenth Amendment, because the state failed to prove every element of the offense. The Supreme Court has held that a challenge on the grounds of insufficient evidence is a valid federal constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This claim was adjudicated on the merits by the Appellate Division, which held: "Viewing the evidence in the light most favorable to the prosecution ..., we find that the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence." *Vivar*, 743 N.Y.S.2d 312 (citation omitted). This decision is contrary to established federal law, because it does not consider whether the elements of the crime had been established. In *Jackson v. Virginia*, the United States Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. 2781.

Petitioner was charged with violating New York Penal Law Section 265.03, which criminalizes possession of a machine-gun, a loaded firearm, or a disguised gun, with the intent to use it unlawfully against another. Section 265.00(3) of the Penal Law includes in the definition of a "firearm" "(b) a shotgun having one or more barrels less than eighteen inches in length; ... or (d) any weapon made from a shotgun or rifle whether by alteration,

modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches." A rifle or a shotgun that is longer than these dimensions is not an illegal weapon under these Subsections. Accordingly, the length of the weapon is a necessary element of the offense. *See People v. Jennings,* 279 A.D.2d 284, 720 N.Y.S.2d 4, 5 (1st Dep't 2001) (vacating a conviction for criminal possession of a weapon in the second degree where the People failed to present specific evidence of the length of a sawed-off shotgun and the trial court failed to include the definition of a firearm in the jury charge); *People v. McGrew,* 150 A.D.2d 729, 541 N.Y.S.2d 597, 598 (1989) (reversing a conviction for criminal possession of a weapon in the second degree where the court failed to instruct the jury on the applicable definition of a "firearm," thus improperly removing a fundamental fact from the jury's consideration)

The trial record indicates that the State did not present a description of the length of the gun. The only relevant evidence was inconclusive and contradictory. One prosecution witness testified that the defendant "pulled out this long thing" (Tr. at 132), but when cross-examined, could not remember how long the gun was (Tr. at 170). Another prosecution witness indicated that the gun used by the defendant was shorter than a gun previously seen in the possession of the victim. (Tr. at 243.) However, yet another witness testified that the two guns looked the same to him. (Tr. at 295.) At any rate, no evidence was elicited on the length of the victim's weapon. A ballistics expert described his knowledge of weapons and described types of firearms, which he distinguished from shotguns and rifles. (Tr. at 519–20, 538.) Nonetheless, the expert also used the terms "firearm" and "shotgun" interchangeably in other portions of his testimony. (Tr. at 525–531.) None of these statements indicates that the weapon used

by Petitioner was shorter than twenty-six inches or had a barrel of less than eighteen inches. At no time did the parties stipulate that the weapon was a firearm for purposes of Section 265.00(3).

Respondent now argues that such proof was unnecessary because the testimony of the witnesses indicated that the "firearm in question was, indeed, a shotgun," the defendant "conceded that the 'firearm' was a shotgun," and "defendant acquiesced to the gun's classification as a shotgun." (Resp't's Opp'n, 4.) This argument reverses the relevant question, which is whether the *shotgun* was a *firearm,* as defined in Section 265.00(3), and thus an unlawful weapon under Section 265.03. Even more disturbing, is the State's attempt to misplace the burden on Defendant to raise an issue of fact by objecting "to the absence of testimony regarding the length of the shotgun." (*Id.*) It is the prosecution's burden to prove every element of the crime.

## B. Jury Instructions

Although Petitioner did not raise a separate claim regarding trial court error, he did point to the trial court's failure to instruct the jury on the definition of a firearm. The Court finds that this issue could also serve as grounds for habeas relief.

Jury instructions are normally a matter of state law, so a federal court reviewing a state court conviction " is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed

to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985) (citing *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

■ Here, the trial court clearly erred in not giving the jury an instruction on the definition of a "firearm" nor asking the jury to determine if the weapon met that definition.[2] This is clear error and violated both state law and the United States Constitution. Under New York law, "[t]he People were required to establish that defendant possessed a loaded firearm, and since the evidence before the jury presented an issue of fact as to whether the weapon in question so qualified, the jury should have received a full definition of the term 'firearm.' " *Jennings,* 720 N.Y.S.2d at 5. *See also McGrew,* 541 N.Y.S.2d at 598.

■ This error rises to the level of a constitutional violation. "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). *See also Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001) ("[W]hile we may not grant habeas relief for a 'mere error of state law,' a finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights."); *Rosenfeld v. Dunham,* 820 F.2d 52, 55 (2d Cir.1987) (holding that a New York defendant charged with criminal possession of a weapon in the second degree was entitled to have the jury instructed on those elements of the crime for which he was being tried).

■ Even where a constitutional violation is found, the inquiry is subject to harmless error review. "[A]n instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The relevant question is whether the error contributed to the verdict. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Where evidence in support of the omitted element is overwhelming, the missing instruction may have had no impact on the outcome. *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) ("Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed."); *Rosenfeld,* 820 F.2d at 55 (affirming the denial of habeas relief where the trial court failed to instruct the jury on every element of the crime, because the reviewing court found that the state presented sufficient evidence at trial to establish that the weapon was operable and loaded with live ammunition and that the jury instructions generally indicated the need to find the weapon and ammunition functional). In Petitioner's case, the error was not harmless. As noted above, the state failed to present any evidence that the shotgun was a firearm for purposes of Section 265.03, and the trial court gave no indication that the jury should consider whether the shotgun was an unlawful weapon that would fall within the ambit of the charge.

This Court finds that the Appellate Division's denial of Petitioner's claim re-

---

2. The trial court described the element as "knowingly and unlawfully possessed a loaded firearm; namely a gun" (Tr. at 3), and later restated it as a "loaded pistol" (Tr. at 714). The court did give a complete charge on the necessary element of operability of the weapon and ammunition. (Tr. at 714.)

garding the sufficiency of the evidence in support of his weapons conviction was contrary to clearly established federal law as described by the United States Supreme Court. The state's failure to prove every element of the offense and the trial court's failure to instruct the jury on the elements of the charge of criminal possession of a weapon in the second degree denied Petitioner the due process of law. Accordingly, the writ of habeas corpus is granted in regards to this claim.

### IV. Assault in the Second Degree

■ Petitioner also claims that his conviction for Assault in the Second Degree violated due process because the evidence was insufficient to show that he acted "with intent to cause physical injury to another person ... by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law Section 120.05(2). He contends that the evidence indicated that the gun went off during a struggle between Petitioner and Moore, and thus that Petitioner did not intend to fire the weapon with intent to cause injury. (Resp't's Ex. B, Def't's App. Div. Brief, 21–22.)

The Appellate Division denied this claim on Petitioner's direct appeal, finding that the evidence was sufficient to convict and that the jury's verdict was not against the weight of the evidence. This Court applies the *Jackson* standard for claims regarding the sufficiency of the evidence and finds that the jury could have found the element of intent beyond a reasonable doubt.

■ Under New York law, intent may be inferred from a defendant's conduct and the surrounding circumstances. *See United States v. Desena*, 287 F.3d 170, 177 (2d Cir.2002); *People v. Smith*, 79 N.Y.2d 309, 315, 582 N.Y.S.2d 946, 591 N.E.2d 1132 (N.Y.1992). Having reviewed Petitioner's claim and the trial record, this Court finds that the jury could reasonably credit the testimony of the eyewitnesses and could reasonably infer intent to harm from Petitioner initially pointing the gun at Moore, prior to Moore attempting to pull the weapon away from him, and from Petitioner's subsequent actions in "racking" the shotgun, pointing it at Moore's head, and pulling the trigger.

Accordingly, this Court finds that the evidence was sufficient to support a finding that Petitioner had the requisite intent to cause injury, as required to convict on the charge of second degree assault. Thus, there are no grounds for habeas corpus relief on this claim.

### V. Petitioner's Challenge to his Sentence.

Petitioner also claims that his sentence on the weapons conviction was unconstitutional and excessive, although he concedes that it was within the range prescribed by New York law. Since the Court has overturned Petitioner's conviction, this claim is now moot.

### CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is GRANTED as regards his conviction for criminal possession of a weapon in the second degree. That conviction is set aside. The Court DENIES Petitioner's claim regarding his conviction for assault in the second degree. Accordingly, Petitioner shall be released upon the expiration of his sentence for the assault conviction, unless the State pursues an additional prosecution on the weapons possession charge within 60 days. This decision is stayed until all appellate proceedings are completed and a final mandate is received by this court.

SO ORDERED